## JAMES WISEMAN v. THOMAS McNULTY, JAMES BRADY, JOHN FURLONG, MOSES FURLONG, JOHN DOOLY, PATRICK CODY, MICHAEL CODY, H. F. NICHOLS, LAWRENCE NOLAN, JOHN SHARP, JOHN KIRK, MAT SAFFIN, AND MARTIN SAFFIN.

CONSTABLE'S SALE OF PROPERTY OF TENANTS IN COMMON.—If several persons are the owners of a tract of mining claims as tenants in common, and are known by a company name, and an action is commenced against all of them as individuals composing the company on a money demand, and a judgment is rendered against all as the persons composing the company, and the claims are sold by virtue of an execution issued on the judgment, and a deed executed to the purchaser, and if one or more of the defendants were not served with process and did not appear in the action, the purchaser does not acquire any title as against the persons not served with process and who did not appear.

CONSTABLE'S DEED.—A Sheriff or constable's deed, executed under an execution sale which does not recite the judgment on which the execution was issued, is void.

VERDICT WHERE SEVERAL DEFENSES ARE PLEADED.—Where several defenses are pleaded, either of which is good in law, and the verdict is for the defendants, and the Court errs in its instructions to the jury as to one of the defenses, the judgment will be reversed, unless it is made to appear that the verdict was rendered on one of the defenses in relation to which no error was committed.

FORFEITURE OF A MINING CLAIM.—Where a forfeiture of an interest in a mining claim for non-payment of assessments is claimed under an agreement entered into by all the tenants in common owning the same, the parties claiming the benefit of the forfeiture must show an exact compliance on their part with all the conditions in the agreement, or they will not be entitled to the forfeiture.

FORFEITURE.—In order to have a forfeiture take place, there must be some person, natural or artificial, who is entitled to receive the benefit of the forfeiture when it accrues.

FORFEITURE—TENANTS IN COMMON.—Several persons owning a tract of mining claims as tenants in common, and acting under a company name, have not the capacity to take or hold, in the name of the company, the interest of any one or more of the tenants in common, by forfeiture.

REAL ESTATE—TENANTS IN COMMON.—Tenants in common of a tract of mining claims, acting under a company name, are incapable, in the company name, of taking and holding mining claims by grant, or by any other means by which title to real estate would pass.

FORFEITURE OF REAL ESTATE.—No forfeiture of real estate can take place for non-performance of conditions, precedent or subsequent, unless there are two contracting parties who have, at the same time or successively, an interest in the estate upon which the condition is reserved, for the non-performance of which the forfeiture is claimed.

SAME.—One owning land, and who continues to hold all the interest he ever had in it, cannot annex a condition to his estate of such a character that, upon its breach, the estate shall vest by forfeiture in a person who never held any interest in the land.

Waring v. Crow, 11 Cal. 366, commented on.

APPEAL from the District Court, Seventeenth Judicial District, Sierra County.

The following is the contract entered into between the members of the Richardson Company and those composing the Buffalo Company:

" GOODYEAR'S BAR, Nov. 16, 1856.

" Know all men by these presents, that we the undersigned, do bargain with each other as follows, viz: We of the first part, known as the Richardson Company, do agree with those of the second part, known as the Buffalo Company, to run a bed rock tunnel on the ground of the first mentioned company, on Fir Cap Hill, until they reach the channel; then the Buffalo are to strike off a tunnel through the grounds of the first mentioned company until they reach their own ground; said tunnel to be no wider than six feet, and the Buffalo Company to keep all the gold taken out of the side tunnel, and the main tunnel to be forever undivided property of both companies, unless said Buffalo Company wish to run a new tunnel for their own use; in that case the Richardson Company are to pay back their portion of what the first tunnel cost."

Signed by the members of the two companies, respectively.

The following is the judgment upon which the execution issued, by virtue of which the mining claims were sold:

" *E. Gifford* v. *J. Donahue et als.* Action for the recovery of the sum of one hundred and eighty-three dollars and thirty-seven cents, alleged to be due the plaintiff on book account. Copy of account filed October 14th, 1861, and summons issued returnable on the 16th inst., at 1 o'clock P. M.; summons returned served personally upon M. Donahue, Larry Nolan, P. Cody, and H. F. Nichols, in Township No. 6. On the 16th day of October, 1861, at the hour of two o'clock of that day, the plaintiff appeared by his attorney, A. A. Cooper. The defendants came not, but made default.

" Whereupon, on motion of plaintiff's attorney, it is ordered

and adjudged by the Court, that E. Gifford, the plaintiff, do have and recover judgment of, from, and against John Donahue, M. Donahue, Larry Nolan, B. Kenneif, D. O. Keefe, P. Cody, H. F. Nichols, Pat. Haley, James Wiseman, R. Anderson, John Doe, R. Roe, and H. Hoe, composing the Richardson and Buffalo Company, on the verified complaint of the plaintiff setting forth a copy of the book of original entries, for the sum of one hundred and eighty-three dollars and thirty-seven cents, together with costs, taxed at fourteen dollars and fifty cents, and accruing costs. On motion of plaintiff's attorney, execution issued.

"T. B. PARKE, J. P."

The following is the agreement entered into by the members of the Hibernia Company after the Constable's sale, and the formation of that company:

"At a meeting of the Hibernia Mining Company, held at Goodyear's Bar, the following resolution and agreement was adopted:

"*Resolved*, That for the purpose of running a tunnel upon the mining claims of said company, in the Fir Cap District, an assessment shall be levied on the members thereof once in four weeks, until the said tunnel is completed; and if any member of said company shall neglect or refuse to pay any assessment, until after three of the same shall be levied, he shall forfeit his claim or share to said company; and the company is authorized in the event aforesaid, to enter upon and take full, complete, and absolute possession of said claims so forfeited, without suit or other proceeding. Dated May 26th, 1862.

"John Kirk, James Wiseman, John Furlong, three claims; Dennis O'Keefe, Lawrence Nolan, two claims; Moses Furlong, three claims; Patrick Cody, Matthew Saffin, two claims; Martin Saffin, two claims; John Dooly, half claim; H. F. Nichols, Joseph Killbride, Jas. E. Nolan, Patrick Daly."

It was under the foregoing agreement that the defendants claimed a forfeiture.

Defendants recovered judgment, and plaintiff appealed.
The other facts are stated in the opinion of the Court.

*Creed Haymond,* and *Williams & Johnson,* for Appellant.

In Bingham & Colvin's Treatise on Rents, Covenants, and
Conditions, page 146, it is said that:

" While a party lives there are only three ways whereby
the absolute property of real estate, *once vested,* can pass out
of him : by his own deed, by sale under the judgment of some
competent judicial tribunal, and by the exercise of the right
of eminent domain.   There is no such thing known as a for-
feiture that can deprive a party  of the absolute ownership of
property.   The commission of crime was formerly made to
work such a result, but it is now provided that no conviction
of any person, etc."   And again, page 147: "There is an obvi-
ous difference in depriving a party of the use of another's
property for the violation of certain conditions which have
been affixed by contract or the laws of the State, and depriv-
ing him of his own property for default or dereliction."
Again, same page : " Will any one contend, that if the owner
should covenant to pay a certain sum at a certain time, and in
case of default, forfeit his land to the covenantee, *with provi-
sion of entry,* that it would be operative to vest title in the
covenantee, so that he could maintain an action of ejectment
to get possession, *or if he were in possession that he could not be
removed?*"   There can be no dispute among lawyers as to such
a question.   No such mode of passing title to property is
known.   And again, pages 147 and 148 : " But conditions
cannot be imposed upon one's own property by covenant or
agreement to be complied with by the owner, the non-com-
pliance with which shall pass his title to another."

" It is a general principle of the common law, that whoever
seeks redress for the violation of a contract resting upon
mutual and dependant covenants, to obtain success, must him-
self have performed the obligations on his part." (*Conant* v.
*Conant,* 10 Cal. 254.)

And that " The condition of an obligation is considered as
30

the language of the obligee, and is so construed in favor of the obligor." (Note B, page 22, 2 Parson on Contracts.)

Contracts by reason of which a forfeiture is claimed, must be strictly construed. (*Von Schmidt* v. *Huntington*, 1 Cal. 71; *Ruiz* v. *Norton*, 4 Cal. 357; Sec. 60, Cal. Pr. Act; *Askew* v. *Ebbertz et al.*, 23 Cal. 263; *Colman* v. *Clements et al.*, 23 Cal. 245.)

*Vanclief & Bowers*, for Respondent.

Of course, the mere failure to pay assessments could not work a forfeiture without the assistance of a contract or law.

The passages cited from the Treatise of Bingham & Colvin, goes the length of saying, that an absolute title to property cannot be forfeited. This, we think, is not law. But the estate of miners, in their claims on the public land, is certainly not greater than an estate for life or years.

In construing contracts, Courts are not to depart from what appears to be the intention of the party to prevent a forfeiture.

In *Woodson* v. *Skinner*, Missouri R. vol. 22, p. 23, the Court say: "Whilst Courts will not incline to forfeitures, yet where a right to exact forfeiture is given, they should not withhold a reasonable construction from the written instrument by which they are designed to be enforced."

To the same effect is *Jackson* v. *Topping*, 1 Wend. 394, where the literal and grammatical meaning of the language was departed from to support a forfeiture.

By the Court, RHODES, J.

The plaintiff sues in ejectment, to recover the possession of three undivided seventeenths of a tract of mining ground, known as the mining claims of the Buffalo Mining Company, in Fir Cap Mining District, in Sierra County. It appears that the plaintiff, Dennis O'Keefe, Patrick Daley and twenty others took up and worked these claims in 1856; that subsequently the number of claimants was reduced to seventeen, the said plaintiff, O'Keefe and Daley each owning the one

undivided seventeenth of the Buffalo Company's mining claims; that in 1858 the members of that company united with the members of the Richardson Company, whose claims adjoined those of the Buffalo Company, in running a tunnel in the Richardson Company's claims for the benefit of both companies; that the plaintiff, O'Keefe and Daley worked upon the tunnel and paid assessments to some time in 1861. In October, 1861, three judgments were rendered by a Justice of the Peace against certain persons mentioned as "composing the Richardson and Buffalo Company," and in November following a constable sold and conveyed to L. Nolan, the mining grounds "known as the Richardson and Buffalo Company claims," under an execution against the same persons named as defendants in each of the three judgments.

The purchase was made by Nolan, for the benefit of himself, the plaintiff, O'Keefe and Daley, and a number of others, who were members of those two companies and who contributed their proportion of the purchase money; but it does not appear that Nolan conveyed to them any interest in the claims purchased by him at the constable's sale. Shortly after the execution of the constable's deed to Nolan, he and those for whom he made the purchase formed a company, known as the Hibernia Company, to prosecute the working of the claims of the two former companies. At a meeting of the Hibernia Company in May, 1862, a resolution was adopted by those representing a certain number of claims, among others the plaintiff and his grantors, to levy an assessment once in four weeks, for the purpose of running the tunnel; and the company took possession of the claims and continued to work them until the commencement of this suit. An assessment was levied on the 20th or 24th of July, 1862, which was paid by the plaintiff, O'Keefe and Daley; and subsequently six other assessments were levied, but neither the plaintiff, O'Keefe nor Daley paid either of them. The plaintiff said in October, 1862, that he would not pay any more assessments, and he did not work upon, and was not on, the claim after some time in 1861.

In May, 1863, "a rich prospect was struck" by the Hibernia Company for the first time, and on the 27th of June, 1863, O'Keefe and Daley conveyed to the plaintiff their right, title and interest in the Buffalo Company's claims. Neither of the three companies seems to have been incorporated, but the persons composing them appear to have formed a voluntary association without any agreement in writing. Such are some of the facts that we have gleaned from a record almost devoid of an alphabetical index, and without the assistance of a statement of facts, which should have formed a portion of the briefs in the case.

The defendants rely upon three defenses:

First—The sale by the constable to Nolan.

Second—Abandonment by the plaintiff and his grantors; and,

Third—A forfeiture of the claims of the plaintiff and his grantors for the non-payment of assessments.

The sale under either of the three judgments rendered by Park, J. P., and the constable's deed, were void, so far as the plaintiff, O'Keefe and Daley were concerned, because it does not appear that the summons in either action was served upon either of them, and no appearance in the actions was made by them or in their behalf, the defendants not being joint owners, but being tenants in common of the mining claims.

The constable's deed, as to them, was void for that reason, and for the further reason that it does not recite any judgment upon which the execution issued. (*Donahue* v. *McNulty et als.*, 24 Cal. 411.)

Second—If the jury had found for the defendants on the ground of abandonment, we would not be inclined to disturb the verdict, for we could not say that there was not sufficient evidence from which the jury would be authorized in finding that the plaintiff had abandoned his claim, and that O'Keefe and Daley had also abandoned their claims, but we cannot undertake to say that the jury rendered their verdict for the defendants on that ground, for the question of forfeiture seemed to be pressed more than any other point, and the

plaintiff complains of instructions given by the Court on that point, and of the refusal of the Court to give other instructions asked for by him, and the jury may have found for the defendants upon that question alone.

Third—As to the forfeiture of the claims of the plaintiff and his grantors to the Hibernia Company. The agreement, in the form of a resolution, signed by the plaintiff and his grantors, and a part of the defendants, provides that the assessment shall be levied upon the members of the company " once in four weeks until the tunnel is completed." No provision is made for levying assessments at any other time or for any other purpose. In order that a forfeiture might be produced it would be necessary to prove that the assessments had been levied once in four weeks, and not at other times, for by stipulating for a levy at those intervals of time they have excluded the right of levying assessments at other times. The assessments must have been made for the purpose of running the tunnel, and not to meet other expenses incurred in respect to the enterprise. The evidence shows that the assessments were not levied every four weeks, and it is not proven that the assessments were made solely for the running of the tunnel. Such strict proof is required, because the law does not favor forfeitures. When, by the contract, any covenant or agreement is to be kept or performed, as a condition precedent, by the party claiming the benefit of a forfeiture, he must show an exact compliance, or he will not be entitled to the forfeiture. (*Von Schmidt* v. *Huntington*, 1 Cal. 71.)

It is unnecessary to determine the question that the counsel have very earnestly pressed, whether the party claiming a forfeiture should have the same declared by a judgment of a competent Court, for it will be doubtless found that each class of cases would, in that respect, depend upon its own peculiar circumstances.

But there are questions which we think lie back of the question just mentioned, and which should be first disposed of. 2 Blackstone's Com. 267, defines forfeiture as follows : " Forfeiture is a punishment annexed by law to some illegal act or

negligence in the owner of lands, tenements, or hereditaments, whereby he loses all his interest therein, and they become vested in the party injured, as a recompense which he alone or the public together with himself hath sustained." This definition, which we consider quite accurate, necessarily implies that there must be some person, natural or artificial, who is entitled to receive the benefit of the forfeiture when it accrues. The resolution adopted by the Hibernia Company provides that, in case of non-payment of assessments, etc., " he shall forfeit his claim to the company," and the company is authorized to enter upon and take possession of the forfeited claim. It is not agreed that it shall be forfeited to the persons composing, or those that might thereafter compose, the company, nor to any individual by name. The company does not appear to be a corporation nor even a partnership, holding the claims as partnership property, but simply a voluntary association not formed by articles in writing and without legal existence— a body unknown to the law. As such, the company would be incapable of taking and holding mining claims, by grant, or by any other means, by which title to real estate would pass. As far as appears upon the record, the persons owning claims, who associated together in the formation of the Hibernia Company, were tenants in common of those claims; at least the members of the Buffalo Company, and of the Richardson Company, were tenants in common with each other in their respective companies, and neither party contends that they were partners, or held the claims as partnership property.

The members of the Hibernia Company did not agree, that those who paid the assessments, should receive the forfeiture of the claims of those who failed to pay, and they could not agree with the company that it should enter upon and possess the forfeited claims, because the company was a legal nonentity

Further : it is, to say the least, very doubtful if the term forfeiture, according to its common law signification, has any application to the rights, interests, or remedies of the several persons composing a mining association, such as we find in this case; and we think it has none.

" Lands, tenements and hereditaments may be forfeited by various means : 1. By the commission of crimes and misdemeanors.   2. By alienation contrary to law.   3. By the nonperformance of conditions.   4. By waste.   (Bac. Abridg., Forfeitures ; Bouv. Law Dict.)   Clearly, none of these modes of forfeiture are applicable to estates held as in this case, unless it be the third—the non-performance of conditions.

For the creation of a condition, for the annexing or reserving of a condition, precedent or subsequent, to or upon an estate—whether it is created directly by covenant or agreement, or arises by implication in any manner known to the law, except in the case of a will—two contracting parties are necessary, who have at the same time, or successively, an interest in the estate upon which the condition is reserved.

Bouvier says, in defining a condition : " In its most extended signification, a condition is a clause in a contract or agreement which has for its object to suspend, rescind, or to modify the principal obligation ; or in the case of a will, to suspend, revoke, or modify the devise or bequest."   This definition (except when applied to a will) necessarily requires the execution of a contract.   It is also said of conditions annexed to an estate in lands : " Conditions can only be reserved to the feoffor, donor or lessor and their heirs ; but not to a stranger."   (Bac. Abridg., Forfeitures, O.)   It may be asked, then, how can a condition be annexed to an estate in land by a party owning it, and who continues to hold all the interest he ever had in it, which condition is of such a character that upon its breach the estate shall vest by forfeiture in a person who never held any interest in the land, and has not attempted to convey it ; and much more, in an association of persons who, in their collective capacity, are incapable of taking an estate in lands ?   " He who enters for condition broken shall be in of the same estate he was before."   (Bac. Abridg., Forfeiture.)

In *Waring* v. *Crow*, 11 Cal. 366, Mr. Justice Baldwin, in employing the term *forfeiture*, uses it as synonymous with abandonment, and holds that the mere failure to pay assess-

ments does not produce a forfeiture of the claim of the delinquent owner; and he says that "the mere temporary absence of one partner" would not, under the mining regulations of the vicinity, create "a forfeiture of his interest," so that "a *stranger* could then come in and appropriate his share." There was no issue of a forfeiture in the case, and the learned Judge employed the term in the sense in which it is used among miners, as expressing a loss of the claim by the former owner by abandonment, or by what they considered as amounting to the same thing, by ceasing to work it or refusing to pay assessments, so that any *other person* might take it up, not the vesting of the title in the grantor for condition broken. And he says that, "in order to the enforcement of the *claim*, (not *forfeiture*, as quoted in the appellant's brief,) some appropriate action by suit must be taken to liquidate the demand and sell the property," etc. A lien upon the property, or a claim against the owner, may be enforced in that manner, but a forfeiture cannot; and the opinion of the Court does not give the most distant intimation that it could be worked out in that manner.

It is easy to understand the rights and remedies of the parties where one has contracted with his associates who are jointly interested with him in a mining enterprise, that his share or claim shall stand as security for the payment of his proportion of the expenses that may be incurred in the prosecution of the enterprise, or that they shall have a lien on his claim in the nature of a mortgage, with the power of sale, to collect his share of such expenses, or that upon his failure to do certain things his claim shall be deemed to be abandoned; but no one of these covenants amount to a *condition* subject to which the claim is taken or held, and the breach of any or all of those covenants will not produce a forfeiture, as recognized at common law.

The authorities cited by the counsel for the defendants upon the point of forfeiture are all clear cases of forfeiture at common law. *Woodson* v. *Skinner*, 22 Mo. 23, was a case of a lease for years by the City of St. Louis, the lessee covenant-

ing to pay rent, and that if the rent should be in arrear beyond a certain time he should forfeit his term.    He made default in the payment of rent, and the Court held that the lease was forfeited to his grantor, the city.    In *Jackson* v. *Topping*, 1 Wend. 394, a father granted his lands to one of his sons upon the condition that he should support his father and pay his father's debts, with a clause of re-entry in case of default. The son failed to pay one of the debts.    The Court held that it was a case of an estate upon condition, and that the heirs of the deceased father had a right of entry for the forfeiture, arising upon the breach of the condition.

The cases cited by the defendants from 11 John. 299 ; 14 Id. 120 ; 15 Id. 24, were cases where by law the penalty for the violation of the Non-Intercourse Act was a forfeiture of the goods, and the case in 5 T. R. 120, was a forfeiture for a violation of the revenue laws.    Forfeitures for crimes and mis-demeanors proceed upon different principles from those arising upon contract.    Those cases show what are the rights of the parties in certain classes of cases, where a forfeiture has taken place as a penalty for crime, but they do not assist us in solv-ing the question whether the defendants here had the right to claim a forfeiture.

Again, if the result contended for by the defendants can be worked out in the manner they claim, and the title of the delinquent claimholder can be thus transferred to his associates or to the company, we will then find that we have a new mode of transferring titles—a mode in which neither the owner nor any one acting under his authority, or under or in pursuance of a judgment of a Court, conveys the title—a mode in which the new holder of the title comes in, neither by forfeiture for crime or for breach of condition annexed to the grant made by him, his ancestors or grantors, nor by pur-chase in its most enlarged sense, nor by descent, nor by title accruing to him by operation of law.    An intended purchaser would look in vain to the records in the Recorder's office or in the Courts, for the evidences of the transmission of a title in that mode.

31

People v. Stratton.

The term "forfeiture" is often employed by miners as synonymous with abandonment, but the term we have considered is used in the objectionable instructions, not as denoting abandonment, but as a mode of transferring title.

What we have already said sufficiently manifests our opinion in relation to the instructions complained of, without noticing them in detail.

Judgment reversed and the cause remanded for a new trial.