UNITED STATES v. JONES.

(District Court, N. D. New York.  March 2, 1916.)

1. SEARCHES AND SEIZURES ⬥⬥3—SEARCH WARRANTS—AUTHORITY TO ISSUE—"JUDGE"—"COURT."

United States commissioners are neither judges nor courts, although they at times act in a quasi judicial capacity and exercise the power of a court, in so far as an act of Congress has conferred specific authority or imposed the performance of a special duty, and while they are authorized

⬥⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to and may issue search warrants, when specially authorized to do so by some act of Congress, they possess no general power in that respect.

[Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. §§ 2, 3; Dec. Dig. ☞3.]

2. POST OFFICE ☞47—SEARCH WARRANTS—AUTHORITY TO ISSUE.

Congress having specifically authorized United States commissioners to issue search warrants in certain cases, and having conferred no authority to issue warrants to search and seize letters, writings, etc., used or intended to be used in the execution of a scheme to defraud in the execution of which the mails are used, a United States commissioner had no authority to issue a search warrant for such a purpose.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 65; Dec. Dig. ☞47.]

3. POST OFFICE ☞47—SEARCH WARRANTS—AUTHORITY TO ISSUE.

While it would seem that such power ought to exist, no authority resides in or has been conferred upon a District Judge to issue a search warrant in such a case.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 65; Dec. Dig. ☞47.]

Criminal prosecution by the United States against Wylie B. Jones. On application by the defendant Wylie B. Jones for an order directing the United States attorney for the Northern district of New York to return to him certain letters and papers and copies of letters and pamphlets or circulars belonging to him, and which he claims were seized unlawfully and in violation of his constitutional rights under and by virtue of a search warrant issued by one of the United States commissioners in said district. Motion granted.

Frank J. Cregg, Asst. U. S. Atty., of Syracuse, N. Y., and Dennis B. Lucey, U. S. Atty., of Ogdensburg, N. Y.

Abel I. Smith, Jr., of New York City, and Geo. B. Curtiss, of Binghamton, N. Y., for defendant.

RAY, District Judge. One of the assistant United States attorneys for the Northern district of New York having received through inspectors of the Post Office Department information tending to show that the defendant, Wylie B. Jones, had devised a scheme or artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and that said Jones had been and then was engaged in the execution of such scheme, and that he had used and was using the post office at Binghamton, N. Y., for the execution of such scheme or artifice by sending and receiving letters, writings, circulars, pamphlets, and advertisements through said post office, and having information that said Jones had in his possession letters received by him in the execution of such scheme and circulars or pamphlets, such as had been used and which were to be used in his possession at his office in said city of Binghamton, thereupon applied to the nearest United States commissioner for a warrant of arrest of said Jones, and also for a search warrant authorizing the search of his said premises or office at the city of Binghamton, and the seizure of the documents referred to, if found. These warrants were placed in the hands of a deputy United States

marshal for said district, who proceeded to the premises described and mentioned in company with a post office inspector and the assistant United States attorney and there made a search. A large number of circulars, documents, letters, and copies of letters answering the general description were found and seized and in legal effect turned over to the custody of the United States attorney for the Northern district of New York, although same have been held in the actual manual custody of the deputy United States marshal awaiting the further order of the court. There was no search of the dwelling house of the defendant, and no seizure at or taking of papers therefrom.

There was no forcible resistance to the execution of this search warrant, and the defendant was not arrested. At that time no indictment had been found. The defendant in no way obstructed the search, but protested against same, and against the taking and carrying away of the papers mentioned. The defendant thereupon on petition applied for and obtained an order to show cause why such papers, documents, etc., should not be returned, and enjoining the use of same until the determination of the order to show cause. While an indictment was subsequently found against the defendant and is now pending, such documents and papers have not been used.

The defendant not only challenges the power and authority of the United States commissioner to issue the search warrant in question, but alleges that the search and taking constituted and constitutes an unlawful, an unwarranted and an unreasonable search and seizure, in violation of his constitutional rights, and that the seizure and use of such documents and papers will be compelling the defendant to furnish or give evidence against himself.

The Fourth Amendment to the Constitution of the United States provides as follows:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

The Fifth Amendment to the Constitution of the United States provides that:

"No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, * * * nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law. * * *"

[1] United States commissioners are neither judges nor courts, although they at some times act in a quasi judicial capacity and exercise the power of a court in so far as an act of Congress has conferred specific authority or imposed the performance of a special duty. United States v. Tom Wah (D. C.) 160 Fed. 207, affirmed 163 Fed. 1008, 90 C. C. A. 178; Todd v. United States, 158 U. S. 282, 15 Sup. Ct. 889, 39 L. Ed. 982; Ex parte Hennen, 13 Pet. 230, 10 L. Ed. 138; United States v. Allred, 155 U. S. 591, 15 Sup. Ct. 231, 39 L. Ed. 273; United States v. Clark, 1 Gall. 497, Fed. Cas. No. 14,804;

In re Perkins (D. C.) 100 Fed. 950; United States v. Beavers (D. C.) 125 Fed. 778. These commissioners may do what they are authorized to do, and may issue search warrants when specially authorized to do so by some act of Congress, but they possess no general power in that respect.

[2] United States commissioners may issue a search warrant authorizing an internal revenue officer to search premises when oath is made by such officer that he has reason to believe and does believe that a fraud upon the revenue has been or is being committed upon or by the use of the premises to be searched. 3 U. S. Comp. Stat. 1913, § 6364, page 2865; Act July 13, 1866, c. 184, § 15, 14 Stat. 152. A United States commissioner upon proper oath or affirmation may issue a search warrant authorizing the marshal to enter any house, store, building, boat, or other place named in the warrant, in which it shall appear there is probable cause for believing that the manufacture of counterfeit coin or the concealment of counterfeit money, etc., is being carried on. 4 U. S. Comp. Stat. 1913, § 10343, page 4738; Act Feb. 10, 1891, c. 127, § 5, 26 Stat. 743; Act March 4, 1909, c. 321, § 173, 35 Stat. 1121.

In customs cases by section 3066 of the Revised Statutes of the United States (Comp. St. 1913, § 5769), it is provided that if any collector, naval officer, surveyor, or other person specially appointed by either of them, or inspector, shall have cause to suspect the concealment of any merchandise in any particular dwelling house, store building, or other place, they or either of them, upon proper application on oath to any justice of the peace, shall be entitled to a warrant to enter such house, store, or other place in the daytime only, and there to search for such merchandise, and if any shall be found to seize and secure the same for trial, and all such merchandise on which the duties shall not have been paid or secured to be paid shall be forfeited.

By section 173 of the Criminal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1121 [Comp. St. 1913, § 10343]), it is provided that a judge or United States commissioner may upon proper oath or affirmation within their respective jurisdictions issue a search warrant authorizing any marshal or other persons specially mentioned to enter any house, store building, boat, or other place named in the warrant in which there shall appear probable cause for believing that the manufacture of counterfeit money, etc., is carried on or concealment thereof made, and there search for counterfeit money and appliances for making same, and also to seize and secure the same. Dies, molds, and plates which may be searched for and seized under the provisions of this section are harmless in and of themselves, but are instrumentalities and appliances for the commission of a crime, to wit, the crime of manufacturing counterfeit money, coins, or obligations of the United States.

When a person or persons has devised an artifice or scheme to defraud such as is mentioned in section 215 of the Criminal Code of the United States (Comp. St. 1913, § 10385), and executes same in whole or in part by sending letters, pamphlets, writings, circulars,

or advertisements through the United States mails, such writings, circulars, pamphlets, and advertisements are mere instrumentalities or appliances used and to be used for the commission of an offense against the United States. They serve no legitimate purpose, and are not intended to be used for or to serve any legitimate purpose, and it would seem clear that such circulars, writings, pamphlets, and advertisements ought to be the subject of search and seizure, and that judges and United States commissioners ought to have power in proper cases and on proper proof to issue search warrants authorizing the marshal to search for and seize such papers and documents. However, I find no provision in the statutes anywhere authorizing the issue of a search warrant in such a case by either a judge or a United States commissioner. If it was necessary to specially confer this power in counterfeiting cases by act of Congress, why is it not necessary to confer the power by act of Congress in cases affecting the postal service?

All that the case of Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, really decides is that when a person is accused of the commission of a crime and arrested by an officer without a warrant of arrest, and while so held away from his home other officers of the law without a search warrant go to his home and enter it without permission, no one being at home, and make a search of his rooms and furniture, and find and seize and without the consent of such arrested person take away his letters and envelopes of an incriminating nature and other property found on such premises and in any furniture found thereon used by him, such acts constitute an illegal search and seizure, and the papers and property so seized must be returned, and that the court has power, and it is its duty, under such circumstances, to direct and compel the United States attorney to whom such papers have been delivered to return same to the owner. However, considerable is said in the opinion of the court in that case which throws some light on the questions here involved. Whether the issuing and execution of search warrants in criminal cases is limited to cases where Congress has expressly provided for their issue and execution is a question, and an important question. From the fact that Congress has specifically provided for the issue and execution of search warrants in revenue cases, in counterfeiting cases, and in customs cases only, we may infer that no such power exists in reference to post office depredations and post office fraud cases, such as the use of the United States mails in the execution of a scheme to defraud, in violation of section 215 of the Penal Code of the United States. However, in Ex parte Jackson, 96 U. S. 727, 24 L. Ed. 877, the court held:

"1. The power vested in Congress to establish 'post offices and post roads' embraces the regulation of the entire postal system of the country. Under it, Congress may designate what shall be carried in the mail, and what excluded.

"2. In the enforcement of regulations excluding matter from the mail, a distinction is to be made between what is intended to be kept free from inspection, such as letters, and sealed packages subject to letter postage, and what is open to inspection, such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined.

"3. Letters, and sealed packages subject to letter postage, in the mail, can be opened and examined only under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be."

And in passing on the question the court (96 U. S. at pages 732 and 733, 24 L. Ed. 877) said:

"The difficulty attending the subject arises, not from the want of power in Congress to prescribe regulations as to what shall constitute mail matter, but from the necessity of enforcing them consistently with rights reserved to the people, of far greater importance than the transportation of the mail. In their enforcement, a distinction is to be made between different kinds of mail matter, between what is intended to be kept free from inspection, such as letters, and sealed packages subject to letter postage, and what is open to inspection, such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined. Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's own household. No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the Fourth Amendment of the Constitution."

We are at liberty to imply from this language contained in the opinion of the court that papers which are instrumentalities for the commission of a crime in violation of the laws of the United States may be seized by virtue of a search warrant issued upon oath and affirmation particularly describing the thing to be seized. It is clear that the learned judge who wrote the opinion in the Jackson Case so understood the law to be. The question, however, was not involved in that case. But, if so, we find here no warrant for holding that a United States commissioner has authority to issue a search warrant authorizing such a search or seizure. Congress seems to have pointed out by statute the particular cases in which a United States commissioner may issue a search warrant. If a United States commissioner has this general power, there would seem to be no necessity for the special enactments to which attention has been called.

In the act entitled "An act to reduce tariff duties and to provide revenue for the government, and for other purposes," approved October 3, 1913 (38 Stat. 195, c. 16, § 4, subd. G, subsec. 3 [Comp. St. 1913, § 5301]), it is provided:

"That any Circuit or District Judge of the United States, within the proper district, before whom complaint in writing of any violation of the two preceding sections is made, to the satisfaction of such judge, and founded on knowledge or belief, and if upon belief, setting forth the grounds of such belief, and supported by oath or affirmation of the complainant, may issue,

cónformably to the Constitution, a warrant directed to the marshal or any deputy marshal in the proper district, directing him to search for, seize, and take possession of any such article or thing mentioned in the two preceding sections, and to make due and immediate return thereof, to the end that the same may be condemned and destroyed by proceedings, which shall be conducted in the same manner as * * * in the case of municipal seizure, and with the same right of appeal or writ of error."

The sections referred to are evidently subsection 1 and subsection 2 of paragraph G (Comp. St. 1913, §§ 5299, 5300), and those subsections relate to the importation of obscene books, pamphlets, and certain drugs and medicines, and also to lottery tickets, and also relate to "other articles of indecent or immoral use or tendency." This provision providing for searches and seizures in the cases referred to confers the power to issue the search warrant upon a Circuit or District Judge, and of course excludes United States commissioners.

The statutes of all the states provide in certain cases for the issuing of search warrants as do the statutes of the United States, and specify the cases in which they may issue. In 35 Cyc. 1266, it is said, citing cases:

"Search warrants can only be issued upon probable cause supported by oath or affirmation, *and upon the grounds and in the manner prescribed by statute.*"

Section 4026 of the Revised Statutes (Comp. St. 1913, § 7552) provides as follows:

"The Postmaster General may, by a letter of authorization under his hand, to be filed among the records of his department, empower any special agent or other officer of the post office establishment to make searches for mailable matter transported in violation of law; and the agent or officer so authorized may open and search any car or vehicle passing, or having lately before passed, from any place at which there is a post office of the United States to any other such place, or any box, package, or packet, being, or having lately before been, in such car or vehicle, or any store or house, other than a dwelling house, used or occupied by any common carrier or transportation company, in which such box, package, or packet may be contained, whenever such agent or officer has reason to believe that mailable matter, transported contrary to law, may therein be found."

Section 3990 of the Revised Statutes (Comp. St. 1913, § 7474) provides:

"Any special agent of the Post Office Department, collector, or other customs officer, or United States marshal or his deputy, may at all times seize all letters and bags, packets or parcels, containing letters which are being carried contrary to law on board any vessel or on any post route, and convey the same to the nearest post office, or may, by the direction of the Postmaster General or Secretary of the Treasury, detain them until two months after the final determination of all suits and proceedings which may, at any time within six months after such seizure, be brought against any person for sending or carrying such letters."

[3] These sections show a purpose on the part of Congress to provide for a search in certain cases affecting the postal service, but a careful examination of the statutes fails to disclose any statute conferring power on a United States commissioner to issue a search warrant in such a case as the one now presented and before this court. I am also of the opinion that, while the power ought to exist, no authority resides in or has been conferred upon a District Judge to is-

sue a search warrant in such a case. The post office authorities, especially the inspectors, and also United States attorneys, are now hampered and delayed in their investigations by the absence of such authority, and great delay results and vast expense is incurred in proving that defendants in such cases have had and have in their possession fraudulent circulars and pamphlets with intent to send same through the mails and that some have been so sent. If men will devise and execute schemes to defraud of the character set forth in section 215 of the Criminal Code of the United States, and will in aid of the execution of same use the mails to send circulars and so-called letters containing false and fraudulent statements to their victims, or intended victims, such false documents ought to be treated as mere instrumentalities for the commission of crime, as indeed they are, and made the subject of search and seizure, not only for the protection of the Post Office Department, but the public generally.

If it be competent and constitutional for Congress to enact that the workshop of a counterfeiter may be searched under authority of a search warrant, and the counterfeit money and appliances for making same seized, if found, it seems clear that it is constitutional and competent for Congress to enact that the workshop or storehouse of the one who seeks to gain a livelihood by defrauding his fellow men by means of false and fraudulent representations in the form of circulars or letters written or printed for that purpose, and sent or intended to be sent through the mails in violation of law, shall be subject to search, and such instrumentalities for defrauding the unwary shall be subject to seizure. It seems to me clear that such documents, pamphlets, and letters intended for such a purpose, whether written or printed, *"rightfully belong to the custody of the law,"* and that the law has the right to search for and seize them. Such documents are not within the category of a person's *"private books or papers."* The law suggested, in my judgment, would not be unconstitutional within Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. In that case the customs revenue law condemned by the court required the defendant, or claimant, to produce in court "his *private* books, invoices, and papers," and the court then held:

"It does not require actual entry upon premises and search for and seizure of papers to constitute an unreasonable search and seizure within the meaning of the Fourth Amendment; a compulsory production of a party's private books and papers to be used against himself or his property in a criminal or penal proceeding, or for a forfeiture, is within the spirit and meaning of the amendment. * * * The seizure or compulsory production of a man's private papers to be used in evidence against him is equivalent to compelling him to be a witness against himself, and, in a prosecution for a crime, penalty, or forfeiture is equally within the prohibition of the Fifth Amendment. Both amendments relate to the personal security of the citizen. They nearly run into and mutually throw light upon each other. When the thing forbidden in the Fifth Amendment, namely, compelling a man to be a witness against himself, is the object of a search and seizure of his private papers, it is an 'unreasonable search and seizure' within the Fourth Amendment. Search and seizure of a man's private papers to be used in evidence for the purpose of convicting him of a crime, recovering a penalty, or of forfeiting his property, is totally different from the search and seizure of stolen goods, dutiable articles on which the duties have not been paid, and the like, which rightfully belong to the custody of the law."

It will be noted that the court is all the time referring to and speaking of the production, etc., of a person's *"private* papers," and not to papers and documents prepared for the very purpose of being used in cheating and defrauding others in ·violation of law and ·violating a law of the United States. The United States has the right to make· it a crime to send such documents through the mails, and it has an interest in such documents or circulars to the extent that they shall not be so sent. In fact, it seems to me that when a person engaged in the commission of a crime, prepares instrumentalities for its perpetration, whether such instrumentalities consist of written or printed documents (which ought not to be considered or treated as "private papers"), or tools and implements, same ought to be forfeited to the government and a proper subject of search and ·seizure. In the opinion in the Boyd Case the court, after speaking of certain authorized searches and seizures, said (116 U. S. 624, 6 Sup. Ct. 1524, 29 L. Ed. 746):

· "But, when examined with care, it is manifest that there is a total unlikeness of these official acts and proceedings to that which is now under consideration. In the case of stolen goods, the owner from whom they were stolen is entitled to their possession; and in the case of excisable or dutiable articles, the government has an interest in them for the payment of the duties thereon, and until such duties are paid has a right to keep them under observation, or to pursue and drag them from concealment; and in the case of goods seized on attachment or execution, the creditor is entitled to their seizure in satisfaction of his debt; and the examination of a defendant under oath to obtain a discovery of concealed property or credits is a proceeding merely civil to effect the ends of justice, and is no more than· what the court of chancery would direct on a bill for discovery; whereas, by the proceeding now under consideration, the court attempts to *extort* from the party his private books and papers to make him liable for a penalty or to forfeit his property."

This court is of the opinion that a suitable law on this subject should be enacted. However, after consideration of the statutes and cases, I am of the opinion that the commissioner had no authority to issue the warrant in this case, and that the marshal, in the absence of statutory authority, had no authority to search for and seize the papers in question.

Hence the motion for their return is granted.