---

### Ex parte SING.

#### (Circuit Court, N. D. New York. July 12, 1897.)

ALIEN—DEPORTATION OF CHINAMAN—REFUSAL TO BE SWORN.

> A Chinese person, who is shown by uncontradicted evidence to be entitled to remain in the United States, cannot be deported because of his refusal to be sworn to testify at the request of the prosecution.

R. M. Moore, for petitioner.

Samuel M. Welch, Jr., Asst. U. S. Atty., opposed.

COXE, District Judge. The petitioner was brought before a United States commissioner charged with violation of the Chinese exclusion act of May 5, 1892, and, after hearing, an order was made removing him to the empire of China. A witness was produced who swore to facts which entitled the petitioner to remain in this country. This testimony was wholly uncontradicted. The district attorney, thereupon, requested that the petitioner be sworn, which, under the advice of counsel, he declined to do. The evidence being closed the commissioner ordered the petitioner deported upon the sole ground that his failure to be sworn cast so much doubt upon his right to remain in the United States as to justify his removal therefrom. The petitioner, thereupon, sued out this writ.

The simple question, then, is, whether the failure of a Chinese person to be sworn at the request of those who are endeavoring to deport him raises such a presumption against him as to warrant his removal. But for his refusal to be sworn he would be entitled to remain. This was conceded on the argument. Does his refusal raise a presumption against him sufficiently strong to overthrow the positive testimony in his behalf? Is his silence alone sufficient to support a judgment which involves imprisonment and custody for months while being transported thousands of miles by land and sea? It is thought not. If the petitioner were charged with an offense or a misdemeanor, then, under the act of March 16, 1878, his failure to be sworn "shall not create any presumption against him."

But it is said that the act of 1892 is political and not criminal in character and that the provision for imprisonment at hard labor is unconstitutional. The decisions upon this question are not in accord and it is unnecessary to decide it, for, upon the facts here, the presumption, assuming one to exist, is not sufficient to overthrow uncontradicted testimony and furnish the only foundation for the judgment. If something had occurred to discredit the testimony offered on behalf of the petitioner, if there had been a conflict upon the facts, if some witness had sworn to a circumstance

which called for explanation from the petitioner, if the commissioner had intimated that, for any reason, he did not credit the petitioner's witness, the rule might be different. But the judgment of the commissioner, in effect, declares that after a Chinese person has proved himself a citizen of the United States, unless he goes upon the witness stand, at the request of his prosecutors, the court will find that he is not a citizen and must be deported. I am familiar with no such rule of evidence and no authority has been cited warranting such a course. If not a criminal statute the act of 1892 is, concededly, a most drastic and summary law. Its machinery should not be set in motion by straining the evidence so as to convict those who, because of their ignorance of our language and institutions, are peculiarly helpless and unable to protect themselves. It is one of the safeguards of our organic law that no one shall be compelled to incriminate himself and the courts have gone to the greatest lengths in enforcing this principle by a broad and liberal interpretation. It has never been construed in a narrow or illiberal spirit or relaxed so as to endanger civil freedom or oppress one, no matter how lowly, whose liberty is threatened. A Chinese person is entitled to demand that the judgment of deportation against him shall be based on legal evidence. The petitioner is discharged.