UNITED STATES v. HUNG CHANG.

(District Court, N. D. Ohio, E. D. December 17, 1903.)

1. ALIENS—EXCLUSION—APPEAL—HEARING DE NOVO.

On an appeal from an order of a United States commissioner excluding a Chinese alien to the United States District Court, the hearing is de novo, and not on the testimony taken before the commissioner.

2. SAME—BURDEN OF PROOF.

Under Chinese Exclusion Act May 5, 1892, c. 60, § 3, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320], providing that any Chinese person or person of Chinese descent arrested under the provisions of the act shall be adjudged to be unlawfully within the United States unless such person shall establish by affirmative proof to the satisfaction of the justice, judge, or commissioner, his lawful right to remain in the United States, the burden of proving that a person arrested as a Chinese alien not entitled to enter is a Chinese person or a person of Chinese descent is on the United States.

3. SAME—METHOD OF PROOF.

Whether a person arrested for violating the Chinese exclusion act is a Chinese person should be proved by persons who have made a study of racial characteristics, so as to be capable of giving expert opinions with reference to the race of the accused.

4. SAME—WITNESSES—COMPETENCY OF EXPERTS.

A witness whose only information as to the racial characteristics of a Chinese person was derived from the reading of an unknown article in McClure's Magazine and from the perusal of letters of a certain author in journals, together with his experience of three months as a government Chinese inspector, and from association with friends whom he designated as Chinese, was insufficient to entitle him to testify as an expert as to whether an accused was a Chinese person within the Chinese exclusion acts.

5. SAME.

Where a witness had not read anything on the subject of racial distinctions, and his only experience with regard thereto was acquired in his position as Chinese inspector in charge, since 1902, the duties of which office consisted largely in directing subordinates, he was not competent to testify as an expert that accused was a Chinese person within the United States exclusion acts, though he had observed those whom he considered to be Chinese persons, and had been called on, as a part of his duties, to decide whether a person was a Chinese person or not.

6. SAME.

Where a witness on cross-examination admitted that his only means of judging between a Chinaman, a Japanese person, or Korean was the method of arranging the hair and the language spoken, and that, if the queue was eliminated, and he did not hear the man speak, he could not tell a Chinaman from a Japanese or Korean, he was not entitled to testify as an expert as to whether accused, charged with violating the Chinese exclusion acts, was in fact a Chinese person.

7. SAME—NATURE OF PROCEEDING.

A proceeding for the exclusion of an alleged Chinese person, in so far as the trial of the issue as to whether or not accused is a Chinese person is concerned, is to be regarded as criminal in its nature.

8. SAME—CONFESSION.

In a proceeding to exclude an alleged Chinese person from the United States, statements made by him, while in jail, to the officer who arrested him, without any admonition that what he might say would be used against him, and tending to show him to be a Chinese person, were inadmissible against him.

¶ 2. Citizenship of Chinese, see notes to Gee Fook Sing, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.

**9. SAME.**

Statements made by an alleged Chinese alien that he was born in China, that his parents and grandparents were Chinese persons, were mere expressions of opinion, and unavailable as proof of his nationality against him.

**10. SAME—WITNESSES—COMPELLING ACCUSED TO TESTIFY.**

In a proceeding for the exclusion of an alleged Chinese person the district attorney was not entitled to compel accused to take the stand and submit to an examination, or to answer a question as to whether or not he was a Chinese person, accused not being required to testify against himself.

John J. Sullivan, U. S. Atty.

Vessey, Davis & Manak, for defendant.

WINC, District Judge. On the 3d day of October of this year one Hung Chang was arrested upon a warrant issued by John H. Simpson, United States Commissioner for the Northern District of Ohio, the basis for such warrant being the affidavit of Thomas P. H. O'Neill "that, on or about the 3d day of October, A. D. 1903, at Cleveland, Cuyahoga county, Ohio, in said district, Hung Chang, in violation of section 13 of the act of September 13, 1888, of the Revised Statutes of the United States, was, being a Chinese person, found unlawfully within the boundaries of the United States of America, against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided." Hung Chang was immediately arrested, and confined in the county jail until the 26th day of October, 1903, at which time he was found by the commissioner to be unlawfully within the United States; and thereupon an order was made by the commissioner for the removal of the said Hung Chang from the United States to China. On October 31, 1903, appeal was taken from this conviction to the judge of the District Court for the Northern District of Ohio.

Section 13, Act Sept. 13, 1888 (25 Stat. 479) c. 1015 [U. S. Comp. St. 1901, p. 1317]), provides, among other things, as follows:

"That any Chinese person, or person of Chinese descent, found unlawfully in the United States, or its territories, may be arrested upon a warrant issued upon a complaint, under oath, filed by any party on behalf of the United States, * * * and when convicted, upon a hearing, and found and adjudged to be one not lawfully entitled to be or remain in the United States, such person shall be removed from the United States to the country whence he came. * * * A certified copy of the judgment shall be the process upon which said removal shall be made, and it may be executed by the marshal of the district, or any officer having authority of a marshal under the provisions of this section."

The hearing on this appeal is de novo, since there is no provision of law that it shall be heard upon the testimony taken before the commissioner.

The third section of the act of May 5, 1892 (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1320]), provides:

"That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States."

126 F.—26

It has been urged that under the provisions of this section the burden of proof in this proceeding is upon the person arrested to show his right to remain in the United States; that is to say, if no proof is offered, either by the United States or by the person arrested, judgment of deportation to China must follow as a matter of course. It will be observed that the section referred to only applies in terms to "any Chinese person or person of Chinese descent." I hold, therefore, that the burden of proving that the person arrested is a Chinese person or a person of Chinese descent is upon the United States, before any burden is cast upon the person arrested to show his right to remain in the United States. The mere fact of arrest can never be considered as proof of guilt of the person arrested, or of the truthfulness of the charge made, or any part thereof. If Congress had intended to provide for so great a departure from the immemorial usages of the Anglo-Saxon law, the act would have read that "any person arrested under the provisions of this act  *  *  *  shall be adjudged to be unlawfully within the United States." Such legislation would plainly be in contravention of articles 5 and 6 of the amendments to the Constitution of the United States.

Under the provisions of the section referred to, it is plain that any person within the boundaries of the United States may in fact be arrested according to the uncontrolled wish or whim of an affiant or the officer charged with the execution of the warrant, whether such person be a Chinese person or not. The act is potentially operative against every one included within the meaning of the word "person," as used in the organic law. I cannot attribute to the national Legislature the purpose of enacting a law 'the enforcement of which would result in deporting to China any citizen of the United States without proof other than the affidavit for arrest.

The next question that arises is as to how this burden shall be sustained by the government, and what character of proof is adapted to establish the affirmative of the issue tendered. The phrases "Chinese person" and "person of Chinese descent" are nowhere defined in any of the acts relating to this subject, except that section 15 of the act of May 6, 1882, as amended in 1884 (Act July 5, 1884, c. 220, 23 Stat. 118 [U. S. Comp. St. 1901, p. 1311]), provides that the provisions of this act shall apply to "all subjects of China and Chinese, whether subjects of China or any other foreign power"; and section 3 of the act of September 13, 1888 (25 Stat. 476, c. 1015 [U. S. Comp. St. 1901, p. 1313]), provides "that the provisions of this act shall apply to all persons of the Chinese race, whether subjects of China or other foreign power, excepting Chinese diplomatic or consular officers and their attendants." It is intimated, then, by the section last referred to, that the person charged under the act must be shown to be of the Chinese race, as distinguished from any other race.

`The human family is divided into races, as the animals of the brute kingdom are divided into species, and various names have been given by various people to these races and species, according to the methods of distinction adopted by each. Sometimes the names given to the various races are derived from the geography of the original

habitat of such race, and sometimes according to the supposed tribal origin; as, for example, the "Anglo-Saxon race," and the "African race." We must assume, from the terms used in the act, that there is some difference existing between a person of the "Chinese race" and persons of other races. In what those differences consist, and as to how racial distinctions manifest themselves, are matters of peculiar knowledge. This knowledge can only be acquired by study and observation and reading the works of those who have made study and observation, and a practice of such knowledge by making comparisons between the race to be distinguished and others most similar thereto. By such studies and experiences one may come to be so expert that his opinions, when applied to a specific case, will have a convincing, proving force. The opinion of one without this experience and learning amounts only to idle conjecture. We recognize this distinction in questions relating to zoology, ornithology, ichthyology, entomology, and bacteriology. In this proceeding the making of a distinction arising in the science of anthropology is involved, and the liberty, and perhaps the life, of a human being is at stake. I have therefore held that the opinion of a witness proffered by the government as an expert, who, upon cross-examination, admitted that his learning on this subject of racial distinctions was derived from the reading of an article in McClure's Magazine, the authorship of which was unknown to him, and from the perusal of the letters of Mr. Carpenter to the journals which employed him, and that his experience consisted of three months' employment in the service of the government as Chinese inspector, and from association with some friends of his in Boston whom he designated as Chinese, was not sufficiently founded in knowledge and practice to have evidential weight.

I also refused to receive the testimony of the witness Pierce as an expert, because he stated that he had not read anything on the subject of racial distinctions, and that his only experience was that which he had had since the year 1902, in his position as Chinese inspector in charge, the duties of which office consisted largely of directing his subordinates. It is true he stated that he had observed, to a certain extent, those whom he considered to be Chinese persons, and had been called upon, as a part of his duties, to decide whether a person was a Chinese person or not. He admittedly had acquired no knowledge of what constituted the racially distinctive features of the Chinese, and, in his practice, could only have applied his innate knowledge.

I further refused, for the same reason, to receive the opinion of a witness who stated that he was a Chinese person, and who admitted, upon cross-examination, that his only means of judging between a Chinaman and a Japanese person or Korean was the method of arranging the hair, and the language spoken; and that, if the queue were cut off, and he did not hear the man speak, he could not tell a Chinaman from a Japanese or Korean. This was all the testimony of those who were claimed by the government to be experts.

The witness Moy was asked to testify with respect to some statements made by the defendant, Hung Chang. It appeared, from the voir dire examination, that the statements made by Hung Chang were

made in the jail of this county in which he was confined, in answer to questions propounded by O'Neill, the officer who first made the arrest, which questions were translated by Moy and the translated answers offered in evidence. In this proceeding, so far as the trial of the issue as to whether or not the defendant is a Chinese person is concerned, I hold that it is a criminal case. In the case of Fung Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905, there were petitions for writs of habeas corpus, all of which contained the allegation that the petitioner was a person of the Chinese race, born in China, and not a naturalized citizen of the United States. In the case of Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082, an application in writing for a writ of habeas corpus by Lem Moon Sing contained as the grounds for the application, among other things, the allegation that the applicant was a person of the Chinese race, born in China, and never naturalized in the United States. In the case of Li Sing v. United States, 180 U. S. 486, 21 Sup. Ct. 449, 45 L. Ed. 634, it was taken as an admitted fact that Li Sing was a Chinese person. The only contention made was that the Chinese person was a merchant. In Wong Wing v. United States, 163 U. S. 228, 16 Sup. Ct. 977, 41 L. Ed. 140, the fourth section of the act of July 5, 1892 (27 Stat. 73, c. 145 [U. S. Comp. St. 1901, p. 343]), was declared unconstitutional. With respect to the other provisions of the act, it is said in the opinion, on page 235, 163 U. S., and page 980, 16 Sup. Ct., 41 L. Ed. 140, "We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid." In this case, it was taken for granted that the petitioners for the writ of habeas corpus were Chinese persons, and aliens. In the case of United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890, in which it was held that a child born in the United States of parents of Chinese descent, who, at the time of his birth, were subjects of the emperor of China, but had a permanent domicile and residence in the United States, and were there carrying on business, and were not employed in any diplomatic or official capacity under the emperor of China, became at the time of his birth a citizen of the United States, by virtue of the first clause of the fourteenth amendment to the Constitution of the United States. On page 699, 169 U. S., and page 476, 18 Sup. Ct., 42 L. Ed. 890, Justice Gray, in the opinion of the court, says:

"The acts of Congress known as the Chinese Exclusion Acts, the earliest of which was passed some fourteen years after the adoption of the constitutional amendment, cannot control its meaning, or impair its effect, but must be construed and executed in subordination to its provisions. And the right of the United States, as exercised by and under these acts, to exclude or expel from the country persons of the Chinese race born in China and continuing to be subjects of the emperor of China, though having acquired a commercial domicile in the United States, has been upheld by this court, for reasons applicable to all persons alike, and inapplicable to citizens of whatever race or color."

And on page 700, 169 U. S., and page 476, 18 Sup. Ct., 42 L. Ed. 890, in interpreting the decision in Fong Yue Ting v. United States, supra, it is said:

"Congress may call in the aid of the judiciary to ascertain contested facts on which an alien's right to be in the country has been made by Congress to depend."

It may be observed, then, that it would be unconstitutional by any proceedings to deport a citizen of the United States to China, and that the provisions of the acts of Congress for the deportation of Chinese persons who are aliens are constitutional. When, therefore, the question is raised as to whether or not a particular individual is a Chinese person, and an alien, by charges to that effect made in an affidavit and denied by him by his plea of not guilty, upon the solution of that issue depends the existence or nonexistence, in favor of that individual, of constitutional rights which would prevent his deportation.

This charge may be made, under the provisions of the act, against any person; and the trial of the issue raised is a criminal case, and the statements of Hung Chang made to Moy must be treated as confessions attempted to be proven. The fact that whatever was said by Hung Chang was said in response to questions put to him when in jail, by the officer who arrested him, without an admonition that what he might say would be used against him, takes away from the statements the characteristic of being voluntary. The examination in the jail, by the inspector, was in its nature inquisitorial, and the rule of law which prevents the introduction of such testimony is designed to discourage such methods. A further objection is that the language of the so-called confession is not given; only the interpretation of the witness. For these reasons, I excluded from consideration the testimony of Moy as to the statements of Hung Chang. Even though the statements were admitted to the effect that he was born in China, and that his parents and grandparents were Chinese persons, the testimony would not be important. The fact that an individual was born in China is in no wise conclusive that he is a Chinese person, nor does it tend to prove that he is such. The statement that his father and mother and his grandparents were Chinese persons is only the expression of an opinion, and can have no more weight, in coming from the defendant, than if coming from any one else. Expressions of opinion cannot be taken as admissions.

The district attorney, on behalf of the government, asked that the defendant be compelled to take the witness stand, and submit to examination in the trial of the cause. This was refused. The question was then addressed to Hung Chang by the district attorney as to whether or not he was a Chinese person. Objection was made to answering this by Hung Chang and his counsel, which was sustained. This ruling depends upon the same considerations which have led me to the conclusion that this is a criminal case, with respect to the determination of the issue as to whether or not the person arrested is a Chinese person. If a criminal case, plainly the defendant cannot be compelled to testify. But, even if not a criminal statute, as said by Judge Coxe in Ex parte Sing (C. C.) 82 Fed. 22:

"The act of 1892 is concededly a most drastic and summary law. Its machinery should not be set in motion by straining the evidence so as to convict those who, because of their ignorance of our language and institutions, are

peculiarly helpless and unable to protect themselves. It is one of the safeguards of our organic law that no one should be compelled to incriminate himself, and the courts have gone to the greatest lengths in enforcing this principle by a broad and liberal interpretation. It has never been construed in a narrow or illiberal spirit, or relaxed so as to endanger civil freedom, or oppress one, no matter how lowly, whose liberty is threatened. A Chinese person is entitled to demand that the judgment of deportation against him shall be based on legal evidence."

For the reasons given, I find that the government has failed to establish that the defendant is a Chinese person, as charged in the affidavit, and that, therefore, no burden is cast upon the defendant to show his right to remain in the country. I therefore make an order for the discharge of Hung Chang, a copy of which is hereto attached and made a part of this record.