UNITED STATES v. HING QUONG CHOW.

(Circuit Court, E. D. Louisiana. December 8, 1892.)

No 2,006.

CHINESE—UNLAWFUL PRESENCE—INDICTMENT.

The act of May 5, 1892, providing that any Chinese person "convicted and adjudged" to be not lawfully entitled to remain in the United States shall be imprisoned at hard labor for not more than one year, and thereafter removed from the country, cannot be made the basis of an indictment. The statute is political, and not criminal, in its nature; the proceeding is summary in character, and the imprisonment is not for the purpose of punishment, but for detention until the removal is effected in the manner provided by the act.

At Law. Indictment of Hing Quong Chow for being unlawfully in the United States. On motion to quash. Granted.

F. B. Earhart, U. S. Atty.

Larry O'Donnell and T. A. Marshall, for defendant.

BILLINGS, District Judge. The defendant is before the court under an indictment in which he is charged with having come into the United States without lawful right so to do. There are two counts, but they substantially set forth the same offense.

The statute relied upon by the prosecuting officer is found in the fourth section of the act of congress of May 5, 1892. That statute, as it seems to me, deals with the coming in of Chinese as a police matter, and is the re-enacting and continuing of what might be termed a "quarantine against Chinese." They are treated as would be infected merchandise, and the imprisonment is not a punishment for a crime, but a means of keeping a damaging individual safely till he can be sent away. In a summary manner, and as a political matter, this coming in is to be prevented. The matter is dealt with as political, and not criminal. The words used are those which are ordinarily found in criminal statutes; but the intent of congress is, as it seems to me, unmistakable. What is termed "being convicted and adjudged" means "found," "decided" by the commissioner, representing not the criminal law, but the political department of the government. Section 3 is as follows:

"That any Chinese person, or person of Chinese descent, arrested under the provisions of this act or the acts hereby extended, shall be adjudged to be unlawfully within the United States, unless such person shall establish by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States."

Then follows the section relied upon as authorizing this indictment,—section 4:

"That any such Chinese person, or person of Chinese descent, convicted and adjudged to be not lawfully entitled to be or remain in the United States, shall be imprisoned at hard labor for a period not exceeding one year, and thereafter removed from the United States, as hereinbefore provided."

It is to be observed that by section 3 the finding is to be against the Chinese, unless he disproves the allegation that he is here unlawfully. The burden of proof is expressly put on him, and, unless he proves to the satisfaction of the officer his lawful right to remain, he is to be adjudged to be here unlawfully. By section 4 it is this finding which is to be followed by the consequence which, it is urged, authorizes a sentence under a criminal law. I cannot believe this was the intent of congress. A reversal of the presumption of conduct or presence being lawful might be introduced into procedures which were political in character, and assimilated to those relating to quarantine; but it seems to me well-nigh impossible that congress should have intended that in proceedings in their nature criminal there should be the presumption of guilt, and that the accused should be found guilty unless he proves himself to be innocent. The whole proceeding of keeping out of the country a class of persons deemed by the sovereign to be injurious to the state, to be effective of its object, must be summary in its methods, and political in its character. It could have no place in the criminal law, with its forms and rights and delays. After the unlawful presence of the alien is de-

termined, he must be sent back to his country by the treasury department at Washington. To prevent an unreasonable and possibly oppressive detention it must be within one year. Meanwhile he must keep from entering the community of the people of the United States, and therefore he is to be imprisoned. To prevent expense to the government, and as a sanitary matter, he is to be made to work. This, it seems to me, is the meaning of the clause relied upon to authorize trial and punishment for a crime.

There is nothing in the statute declaring that it shall be a crime or a misdemeanor for a Chinese to come into the country. The unlawfulness is not made the basis of criminal procedure or detention, but rather is made the warrant to send him back. The imprisonment spoken of in the statute is that which is necessary to effectuate his return. It seems to me that section 4 deals with proceedings before the commissioner conducting an examination which is political, and not criminal, and amounts to a direction to him and to the authorities who conduct the transportation or removal back to China, and is twofold: First, that a Chinese adjudged to be here unlawfully shall be removed within a year; second, that till removal he shall be kept in prison and made to work.

In accordance with these views, I must direct that this indictment be quashed, and that the defendant be remanded to the custody of the commissioner, to be dealt with according to law.