## In re PERKINS, Deputy U. S. Marshal.

(District Court, E. D. North Carolina. April 2, 1900.)

1. CONTEMPT—POWER TO PUNISH—CONSTRUCTION OF STATUTE.

Rev. St. § 725, giving "said courts" power to punish, by fine or imprisonment, contempts of their authority, refers to the courts established under the preceding section of the act, viz. the circuit and district courts.

2. SAME—ANSWER OF DEFENDANT.

A party charged with contempt, except where it is willful, may purge himself by a disclaimer of disrespect or contempt of the court or its process; but whether a party answering such charge is guilty of a willful contempt, or has properly purged himself thereof, is a question for the court.

3. SAME—UNITED STATES COMMISSIONERS.

While a United States commissioner is a part of the court appointing him, and will be protected in the exercise of his powers as such officer, he has not the power to punish for contempt, and disobedience to his authority should be reported to the court appointing him.

**4. Same—Misconduct of Deputy Marshal—Sufficiency of Answer.**

In a response to a card from a United States commissioner, complaining of the failure to serve a warrant, a deputy marshal wrote the commissioner: "Your pert card to hand. I will have to tell my self-adopted boss, 'Study your official duties, and let your warrants come through the proper channel.' Are you aware that there are other commissioners in my district, and that deputy marshals are under the United States marshal's orders, and not under Mr. D.'s?" Upon a rule to show cause why he should not be punished for contempt, the deputy marshal appeared, and answered that his failure to serve the warrant was because it had not been docketed in the marshal's office, as required by the regulations of the department of justice, his instructions not to execute criminal warrants until so docketed, and his absence from home on official business, under the instructions of the marshal of the district; that the card was written while smarting under the threat of the commissioner to report him for nonperformance of duty; that he regretted writing the same, and withdrew any reflection or intention of being disrespectful or disobedient to the court or its orders. *Held*, that the answer was sufficient to purge the officer of contempt

PURNELL, District Judge. T. W. Dewey, a United States commissioner, issued a criminal warrant, offense not set out in record, and mailed the same to the deputy marshal at Greenville, N. C. Respondent was absent from his place of residence in another part of the district on official duty. The warrant not being executed, the commissioner addressed a postal card to the deputy marshal, concerning the wording of which there is some dispute, to which the deputy marshal replied: "Your pert card to hand. I will have to tell my self-adopted boss, 'Study your official duties, and let your warrants come through the proper channel.' Are you aware that there are other commissioners in my district, and that deputy marshals are under the United States marshal's orders, and not under Mr. Dewey's?" The commissioner issued a rule on respondent, setting forth the above reply, and requiring the deputy to show cause why he should not be attached and punished for contempt, or otherwise dealt with according to law. On the day set for hearing, the deputy marshal appeared with counsel and filed his answer. In the answer the failure to execute the warrant is explained because it had not been docketed in the marshal's office at Raleigh, as required by the regulations of the department of justice; his instructions not to execute criminal warrants until so docketed; his attendance as a witness under subpoena at the district court, and executing an order of said court in taking into possession property at Washington, N. C., in a bankruptcy proceeding, under an order of the district court; and instructions of his chief, the marshal of the district. The explanation of the failure to execute the warrant seems to have been full and satisfactory, but the commissioner held the defendant's answer insufficient to purge him of the contempt as "misbehavior of an officer of the court in his official transactions," and adjudged him guilty on the correspondence set forth, exclusively, as showing disrespect and contempt of the commissioner's court. In the answer respondent, admitting the writing of the card set forth, says

he "offers as an excuse for writing the same that the said commissioner wrote him a postal card threatening to report him for nonperformance of duty if he did not explain his failure to execute the warrant, and the card was written while smarting under the threat"; that "he regrets writing the same, and withdraws any reflection or intention of being disrespectful or disobedient to the court or its orders"; that "he has great respect for the court, and it is always his pleasure to uphold its dignity." He then explains his failure to answer the second letter of the commissioner, which is immaterial. The commissioner holds the answer "neither sufficient, sincere, nor bona fide, and the facts therein contained as a justification and excuse were offered under compulsion, and not voluntary or sincere." He therefore adjudges respondent guilty of contempt, and imposes a fine of $50 or 15 days in jail. From this judgment respondent appealed.

This is a novel proceeding, and might be disposed of summarily, but an investigation of questions involved may be of benefit in many ways. The law relating to contempts in the courts of the United States is often lost sight of, if understood, and confused with the law in other jurisdictions, differing in many essential particulars, restricted by legislation and diverse decisions. The law of contempt in the federal courts is section 725, Rev. St., and the many decisions, generally uniform, construing its provisions. The section is as follows:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

This section is section 17, c. 20, Act Sept. 24, 1789 (the "Judiciary Act"), as amended by Act March 2, 1831. From an examination of the first-mentioned act, it will be readily seen the words "the said courts" in the statute mean the courts established under the preceding sections of the act, i. e. the supreme court, the circuit courts, and the district courts. The amendatory act, above-quoted, has been construed as limiting the power of the circuit courts and the district courts to three classes of cases, where there has been misbehavior in the presence of the court or so near thereto as to obstruct the administration of justice, where there has been misbehavior of any officer in his official transactions, and where there has been disobedience to any order, process, or command of the court. Ex parte Robinson, 19 Wall. 512, 22 L. Ed. 208. Mr. Justice Field in this opinion says:

"The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and vested with jurisdiction over any subject they became possessed of this power."

This section (section 725, Rev. St.) is held to apply to the circuit and district courts, and doubt expressed as to its application to the supreme court; and a contempt of court is a crime against the United States, which, if willful, may be prosecuted by indictment. U. S. v. Jacobi, 4 Am. Law T. Rep. 148, Fed. Cas. No. 15,460. A trial by jury is not a right, but contempts may be punished summarily. In re Savin, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150; Eilenbecker v. District Court, 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 802. The decisions on the subject as to what is a contempt of court are numerous and interesting, not always, but generally, uniform. The exercise of the power has a twofold purpose: To punish the guilty party for his disrespect to the court or its order, and to compel his performance of some act or duty required of him by the court which he refuses to perform. In re Chiles, 22 Wall. 168, 22 L. Ed. 819. But a party charged with contempt, except where it is willful, hence indictable under the statute, may purge himself by a disclaimer of disrespect or contempt of the court or its process. The question of whether a party answering a charge of contempt, whether by rule or otherwise, was guilty of a willful contempt, or has properly purged himself thereof, is a question for the court, in the exercise of a sound judicial discretion. In re Savin, supra.

Can a United States Commissioner punish for contempt? Per se, he cannot. The office of United States commissioner, as now constituted, was created by section 19, Act Cong. approved May 28, 1896 (29 Stat. 184, c. 252). Such commissioners, appointed by the district courts, "have the same powers and perform the same duties as are now imposed upon commissioners of the circuit courts." The term of office of commissioner of the circuit courts expired on the 30th day of June, 1897. No powers are expressly conferred by the act, except authority to administer oaths, and the commissioners are required to keep complete records of all proceedings before them in criminal cases. Their powers, therefore, must be found in the laws concerning commissioners of the circuit courts prior to the passage of this act. The powers and duties of the commissioners of the circuit court to which the present United States commissioners succeed are thus defined by Justice Field in U. S. v. Schumann, Fed. Cas. No. 16,235:

"The office of commissioner was created by the act of February 20, 1812, and his duties were at first limited to taking acknowledgments of bail and affidavits. By several subsequent acts, his powers have been greatly enlarged. Among other things, he is invested with all the authority to arrest, imprison, or bail offenders against the laws of the United States which any justice of the peace or other magistrate of any of the United States can exercise under the thirty-third section of the judiciary act of 1789. 1 Stat. 91. * * * He is thus made a magistrate of the government, exercising functions of the highest importance to the administration of justice. He is an examining and committing magistrate, bound to hear all complaints of the commission of any public offense against the laws of the United States in his district, to cause the offender to be arrested, to examine into the matters charged, to summon witnesses for the government and for the accused, and to commit for trial or to discharge from arrest, according as the evidence tends or fails to support the accusation. For the faithful discharge of his

duty in these particulars, he alone is accountable. He has no divided responsibility with any other officer of the government, nor is he subject to any other's control. The district attorney may appear before the commissioner, and attend to the presentation of the evidence, but in that position he is only counsel of the government. He cannot direct what finding the magistrate shall make or what course he shall pursue."

The powers of the commissioners are stricti juris, and there is no act of congress which confers on either commissioners of the circuit court or United States commissioners the power to punish for contempt. They are not and do not hold United States courts. A commissioner is a part of the court appointing him, and in all proper ways will be protected in exercising his powers as an officer to aid the court in administering justice. He is an arm of the court, a ministerial officer, but exercising some judicial functions. He is required to keep a record of proceedings before him, but this does not create him a court of record. He does not hold a "court," in the legal sense of that phrase. He is not and does not hold a court of the United States. Todd v. U. S., 158 U. S. 278, 15 Sup. Ct. 889. He cannot punish for contempt. Ex parte Perkins (C. C.) 29 Fed. 905. This question was before the circuit court for the district of Indiana, and it was so held in an able opinion by Gresham, circuit judge.

What, then, shall a commissioner do? Is he to sit powerless under "little insults and contempts," without authority to enforce his process? By no means. He is an officer of the court which appoints him. Disobedience to his process and authority is disobedience of the process and authority of the court. The practice throughout the country, as was said in Ex parte Perkins, above quoted, is for the commissioners to refer to the court, whose officers they are, parties, witnesses, and others guilty of contumacious conduct before them, for punishment. This practice is recognized by congress in the bankrupt act of 1898, wherein referees in bankruptcy are required to certify to the judge if any person shall do any of the things enumerated in section 41, and the judge shall thereupon, in a summary manner, hear the evidence, and punish such person in the same manner and to the same extent as for a contempt committed before the court. A referee has more the character of a judicial officer than a commissioner. The same practice obtains before standing masters in chancery, special masters, and referees appointed by the courts. The proceedings before the commissioner, and the judgment entered by him, upon investigation of authorities governing such matters, is therefore unauthorized, and will be dismissed.

The letter of the deputy marshal to the commissioner was highly improper and personally offensive, but cannot support a charge of misbehavior of an officer of the court in his official transactions. He has explained, it seems satisfactorily, even to the commissioner, his failure to execute the warrant. He was engaged in the discharge of official duties as directed by his superior officer, the marshal, executing and obeying process of the district court. He has asked to withdraw the postal card; explained how it was written; disclaimed any disrespect of or to the commissioner,—in short, purged

himself of contempt. In everyday life between man and man, this would be a complete amende honorable, a full apology, a throwing up of the hands, and would disarm any further resentment.

Can further proceedings serve either of the twofold purposes of punishment for contempt? I cannot see how. Possibly, uninfluenced by circumstances and matters aliunde, the commissioner, in a calm judicial frame of mind, would have accepted the answer as "sincere, bona fide, and sufficient." That there is some personal feeling in the proceeding is evident, but antagonism between officers of the government under different departments are to be regretted and discouraged from whatever cause they arise, and the officers, with a proper regard for the efficiency of the service in which they are engaged, should bury personalities.

Courts will protect their officers, but in doing so discard all personal considerations which have no place, and should not be permitted to in any way enter into judicial proceedings. Guided by the law, such rules as subserve the public good, and command confidence and respect for the courts, judicial officers should discharge their duties uninfluenced by any personal considerations. This gains public confidence and respect. Upon this all courts depend in a large measure for their usefulness and efficiency.