LOW FOON YIN v. UNITED STATES IMMIGRATION COM'R et al.

(Circuit Court of Appeals, Ninth Circuit. May 14, 1906.)

No. 1,256.

1. ALIENS—CHINESE—CERTIFICATE OF RESIDENCE—FAILURE TO OBTAIN—DEPORTATION—JURISDICTION.

A United States commissioner has jurisdiction to hear and determine a charge against a Chinese person of being unlawfully within the country without a certificate of residence, though Act Cong. May 5, 1892, c. 60, § 6, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320], providing for the issuance of such certificates, declares that one not obtaining a certificate within a specified time shall be adjudged unlawfully within the country, and shall be arrested and taken before a United States "judge," etc.

[Ed. Notes.—Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

2. SAME—DEPORTATION PROCEEDINGS—CHARACTER.

A proceeding for the deportation of a Chinese laborer not having a certificate entitling him to residence required by Chinese Exclusion Act (Act Cong. May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319], as amended by Act Nov. 3, 1893, c. 14, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1322] and Act April 29, 1902, c. 641, 32 Stat. 176 [U. S. Comp. St. Supp. 1905, p. 295]), is not a criminal proceeding, and hence it is competent for the government to swear such Chinese person as a witness against himself.

3. SAME—STATUTES—VALIDITY.

Chinese Exclusion Act, May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319], in so far as it places the burden of proof of the right of a Chinese person without a certificate to remain in the United States on him, is valid.

4. SAME—NATIONALITY—EVIDENCE.

In proceedings for the deportation of an alleged Chinese person, the fact that he was a native of China, coupled with his personal appearance, indicating by his dress, physiognomy and queue that he was a Chinaman, was sufficient to justify a finding to that effect in the absence of evidence to the contrary.

Appeal from the District Court of the United States for the Northern District of California.

Marshall B. Woodworth, for appellant.

Robert T. Devlin, U. S. Atty., for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge: The record shows that on the 21st day of April, 1905, one J. B. McChesney, one of the government's Chinese inspectors, filed a verified complaint before E. H. Heacock, a United States commissioner for the Northern District of California, at San Francisco, charging "that one Low Foon Yin is a Chinese manual laborer, and is now within the limits of the Northern District of California, aforesaid, without the certificate of registration required by the act of Congress entitled 'an act to prohibit the coming of Chinese persons into the United States,' approved May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319], and the act amendatory thereof, approved November 3, 1893, c. 14, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1322], and the act of Congress approved April 29, 1902, c. 641, 32 Stat. 176 [U. S. Comp. St. Supp. 1905, p. 295]," and praying that a warrant for the arrest of the said Low Foon Yin be issued and that he be arrested and brought before the said commissioner, and upon a hearing being had that he be duly adjudged to be illegally within the United States, and that the proper order for his deportation be made and entered. Upon that complaint a warrant of arrest was issued by the commissioner and executed by the marshal by the arrest and production of Low Foon Yin before the commissioner, when the following proceedings were had:

Mr. Woodworth (attorney for the defendant to the proceeding): I object to the commissioner proceeding with this hearing on the ground that the government has presented no proofs or evidence to show that the defendant is unlawfully in the United States, and I object to the defendant being examined at this time by the commissioner and compelled to testify against himself, and to any questions being propounded to him with reference to the charge herein.

The Commissioner: The objection respecting jurisdiction is overruled pro forma. I also overrule the further objections; the appearance of the defendant; his dress; his physiognomy; his queue, and everything about him—denotes that he is a Chinese. In regard to testifying against himself, I overrule the objection of counsel upon the ground that the courts have held it is not a criminal case, and therefore the rule invoked does not apply.

Mr. Woodworth: Note an exception.

Low Foon Yin, the defendant, sworn:

The Commissioner: Q. Where were you born?

Mr. Woodworth: I repeat the objection already urged, to wit: I object to the commissioner proceeding with this hearing on the ground that he had not jurisdiction of this matter; and further on the ground that the government has presented no proofs or evidence to show that the defendant is unlawfully within the United States; and I object to the defendant being examined at this time by the commissioner and compelled to testify against himself, and to any questions being propounded to him with reference to the charge herein contained.

The Commissioner: I make the same ruling.

Mr. Woodworth: Note an exception.

A. In China.

The Commissioner: Q. When did you first come to the United States? A. Last year.

The Commissioner: Q. Where from, China?   A. From China.

The Commissioner: Q. What has been your avocation or business, laborer? A. Laborer.

The Commissioner: I have no further questions.

Mr. Woodworth: I move to strike out all the testimony of the witness on the ground previously stated.

The Commissioner: I deny the motion.

Mr. Woodworth: Note an exception.

Mr. McKinley: That is the case for the government.

Mr. Woodworth: I desire at this time again to raise the question of the jurisdiction of the commissioner in this case.

The Commissioner: I overrule the objection pro forma.

Mr. Woodworth: We take an exception.

The Commissioner: Do you submit the case?

Mr. Woodworth: Yes, upon the objections already made.

The Commissioner: I order the defendant deported.

Mr. Woodworth: Note an exception. I propose to take an appeal for the purpose of raising the question of jurisdiction, and ask for a stay of 10 days within which to prepare an appeal.

The Commissioner: Granted.

The appeal to the District Court resulted in an affirmance of the order of deportation. The jurisdictional question having been decided adversely to the contention on the part of the defendant by this court in the case of Fong Mey Yuk v. United States, 113 Fed. 898, 51 C. C. A. 528, the single question presented to us is whether or not, in a deportation proceeding, a defendant can be compelled against his will to testify against himself, and ordered deported upon no other evidence than his own statements thus obtained from him. If, as contended on behalf of the appellant, and as was held by Judge Wing in the case of United States v. Hung Chang (D. C.) 126 Fed. 400, the proceeding is a criminal one, the point would, of course, be good. But it has been decided by many of the federal courts, including the Supreme Court of the United States, that such a proceeding is not a criminal one. It is true that the act of Congress of May 5, 1892, known as the "Geary Act" (St. 1891, p. 25), contained a criminal feature in that by its fourth section it was provided "that any such Chinese person or person of Chinese descent convicted and adjudged to be not lawfully entitled to be or remain in the United States, shall be imprisoned at hard labor for a period of not exceeding one year, and thereafter removed from the United States as hereinbefore provided;" that is to say, as provided by the second section of that act. But the provision in respect to the imprisonment of such Chinese person at

hard labor was declared unconstitutional and void by the Supreme Court in the case of Wong Wing v. United States, 163 U. S. 228, 16 Sup. Ct. 977, 41 L. Ed. 140, and by the United States District Court for the Sounthern District of California in the preceding case of United States v. Wong Dep Ken (D. C.) 57 Fed. 206. It is also true that in the Geary act Congress used ·the words "convicted" and "adjudged" in connection with the finding of the person proceeded against unlawfully in this country, and directing his deportation. But the mere use of such words, instead of others more appropriate, does not convert a proceeding of a political nature into one that is criminal. United States v. Hing Quong Chow (C. C.) 53 Fed. 233. "Deportation," said the Supreme Court in the case of Fong Yue Ting v. United States, 149 U. S.·698–709, 13 Sup. Ct. 1016, 1020, 37 L. Ed. 905, "is the removal of an alien out of the country, simply because his presence is deemed inconsistent with the public welfare, and without any punishment being imposed or contemplated, either under the laws of the country out of which he is sent, or under those of the country to which he is taken." Section 1 of the Act of May 5, 1892, continued in force for a period of 10 years from that date all laws then in force, prohibiting and regulating the coming into this country of Chinese persons, and persons of Chinese descent, and provided, among other things "that any Chinese person or person of Chinese descent, when convicted and adjudged under any of said laws to be not lawfully entitled to be or remain in the United States, shall be removed from the United States to China, unless he or they shall make it appear to the justice, judge, or commissioner before whom he or they are tried, that he or they are subjects or citizens of some other country, in which case he or they shall be removed from the United States to such country; provided, that in any case where such other country, of which such Chinese person shall claim to be a citizen or subject, shall demand any tax as a condition of the removal of such person to that country, he or she shall be removed to China," and (section 3, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320]) "that any Chinese person or person of· Chinese descent arrested under the provisions of this act or the acts hereby extended, shall be adjudged to be unlawfully within the United States, unless such person shall establish by affirmative proof to the satisfaction of such justice, judge or commissioner his lawful right to remain in the United States."

Section 6 of the act of May 5, 1892, c. 60, 27 Stat. 25, as amended by the act of November 3, 1893, c. 14, § 1, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1320], is as follows:

"'Sec. 6. And it shall be the duty of all Chinese laborers within the limits of the United States who were entitled to remain in the United States before the passage of the act to which this is an amendment to apply to the collector of internal revenue of their respective districts within six months after the passage of this act for a certificate of residence; and any Chinese laborer within the limits of the United States, who shall neglect, fail, or refuse to comply with the provisions of this act and the act to which this is an amendment, or who, after the expiration of said six months, shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested by any United States customs official, Collector

of Internal Revenue, or his deputies, United States Marshal or his deputies, and taken before a United States judge, whose duty it shall be to order that he be deported from the United States, as provided in this act and in the act to which this is an amendment, unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness, or other unavoidable cause he has been unable to procure his certificate, and to the satisfaction of said United States judge, and by at least one credible witness other than Chinese, that he was a resident of the United States on the fifth of May, eighteen hundred and ninety-two; and if, upon the hearing, it shall appear that he is so entitled to a certificate, it shall be granted upon his paying the cost.   Should it appear that said Chinaman had procured a certificate which has been lost or destroyed, he shall be detained and judgment suspended a reasonable time to enable him to procure a duplicate from the officer granting it, and in such cases the cost of said arrest and trial shall be in the discretion of the court; and any Chinese person, other than a Chinese laborer, having a right to be and remain in the United States, desiring such certificate as evidence of such right, may apply for and receive the same without charge; and that no proceedings for a violation of the provisions of said section six of said act of May fifth, eighteen hundred and ninety-two, as originally enacted, shall hereafter be instituted, and that all proceedings for said violation now pending are hereby discontinued': Provided, that no Chinese person heretofore convicted in any court of the states or territories or of the United States of a felony shall be permitted to register under the provisions of this act; but all such persons who are now subject to deportation for failure or refusal to comply with the act to which this is an amendment shall be deported from the United States as in said act and in this act provided, upon any appropriate proceedings now pending or which may be hereafter instituted."

In the course of its opinion in the case of Fong Yue Ting v. United States, supra, the court said:

"For the reasons stated in the earlier part of this opinion, Congress, under the power to exclude or expel aliens, might have directed any Chinese laborer found in the United States without a certificate of residence, to be removed out of the country by executive officers, without judicial trial or examination, just as it might have authorized such officers absolutely to prevent his entrance into the country.   But Congress has not undertaken to do this.

"The effect of the provisions of section 6 of the act of 1892 is that, if a Chinese laborer, after the opportunity afforded him to obtain a certificate of residence within a year, at a convenient place, and without cost, is found without such a certificate, he shall be so far presumed to be not entitled to remain within the United States, that an officer of the customs, or a Collector of Internal Revenue, or a Marshal, or a deputy of either, may arrest him, not with a view to imprisonment or punishment, or to his immediate deportation without further inquiry, but in order to take him before a judge, for the purpose of a judicial hearing and determination of the only facts which, under the act of Congress, can have a material bearing upon the question whether he shall be sent out of the country, or be permitted to remain.

"The powers and duties of the executive officers named being ordinarily limited to their own districts, the reasonable inference is that they must take him before a judge within the same judicial district; and such was the course pursued in the cases before us.

"The designation of the judge, in general terms, as 'a United States judge,' is an apt and sufficient description of a judge of a court of the United States, and is equivalent to or synonymous with the designation, in other statutes, of the judges authorized to issue writs of habeas corpus, or warrants to arrest persons accused of crime.   Rev. St. §§ 752, 1014 [U. S. Comp. St. 1901, pp. 592, 716].

"When, in the form prescribed by law, the executive officer, acting in behalf of the United States, brings the Chinese laborer before the judge, in

order that he may be heard, and the facts upon which depends his right to remain in the country be decided, a case is duly submitted to the judicial power; for here are all the elements of a civil case—a complainant, a defendant, and a judge—actor, reus, et judex. 3 Bl. Com. 25; Osborn v. Bank of United States, 9 Wheat. (U. S.) 738, 819, 6 L. Ed. 204. No formal complaint or pleadings are required, and the want of them does not affect the authority of the judge or the validity of the statute.

"If no evidence is offered by the Chinaman, the judge makes the order 'of deportation as upon a default. If he produces competent evidence to explain the fact of his not having a certificate, it must be considered by the judge; and if he thereupon appears to be entitled to a certificate, it is to be granted to him. If he proves that the collector of internal revenue has unlawfully refused to give him a certificate, he proves an 'unavoidable cause.' within the meaning of the act, for not procuring one. If he proves that he had procured a certificate which has been lost or destroyed, he is to be allowed a reasonable time to procure a duplicate thereof.

"The provision which puts the burden of proof upon him of rebutting the presumption arising from his having no certificate, as well as the requirement of proof, 'by at least one credible white witness, that he was a resident of the United States at the time of the passage of this act,' is within the acknowledged power of every Legislature to prescribe the evidence which shall be received, and the effect of that evidence, in the courts of its own government. Ogden v. Saunders, 12 Wheat. (U. S.) 213, 262, 349, 6 L. Ed. 606; Pillow v. Roberts, 13 How. (U. S.) 472, 476, 14 L. Ed. 228; Cliquot's Champagne, 3 Wall. (U. S.) 114, 143, 18 L. Ed. 116; Ex parte Fisk, 113 U. S. 713, 721, 5 Sup. Ct. 724, 28 L. Ed, 1117; Holmes v. Hunt, 122 Mass. 505, 516–519, 23 Am. Rep. 381. The competency of all witnesses, without regard to their color, to testify in the courts of the United States, rests on acts of Congress, which Congress may at its discretion modify or repeal. Rev. St. §§ 858, 1977 [U. S. Comp. St. 1901, pp. 659, 1259]. The reason for requiring a Chinese alien, claiming the privilege of remaining in the United States, to prove the fact of his residence here at the time of the passage of the act 'by at least one credible white witness,' may have been the experience of Congress, as mentioned by Mr. Justice Field, in Chae Chan Ping's Case, that the enforcement of former acts, under which the testimony of Chinese persons was admitted to prove similar facts, 'was attended with great embarrassment, from the suspicious nature, in many instances, of the testimony offered to establish the residence of the parties, arising from the loose notions entertained by the witnesses of the obligation of an oath.' Chae Chan Ping v. United States, 130 U. S. 598, 9 Sup. Ct. 623, 32 L. Ed. 1068. And this requirement, not allowing such a fact to be proved solely by the testimony of aliens in a like situation, or of the same race, is quite analogous to the provision, which has existed for 77 years in the naturalization laws, by which aliens applying for naturalization must prove their residence within the limits and under the jurisdiction of the United States, for five years next preceding, 'by the oath or affirmation of citizens of the United States.' Acts March 22, 1816, c. 32, § 2, 3 Stat. 259; May 24, 1828, c. 116, § 2, 4 Stat. 310; Rev. St. § 2165, cl. 6 [U. S. Comp. St. 1901, p. 1330]; 2 Kent, Com. 65.

"The proceeding before a United States judge, as provided for in section 6 of the act of 1892, is in no proper sense a trial and sentence for a crime or offense. It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country. The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority and through the proper departments, had determined that his continuing to reside here shall depend."

The validity of the provision of the act of May 5, 1892, placing the burden of proof of his lawful right to remain in the United States

on the Chinese person or person of Chinese descent charged with being unlawfully in this country, has been sustained not only by the Supreme Court, but also by the Circuit and District Courts. Li Sing v. United States, 180 U. S. 486, 21 Sup. Ct. 449, 45 L. Ed. 634; In re Sing Lee (D. C.) 54 Fed. 334; United States v. Wong Dep Ken (D. C.) 57 Fed. 206.

In the latter case, in speaking of that provision of the act of May 5, 1892, it was said:

"No one questions the power of Congress to prohibit the coming into this country of any class of foreigners deemed prejudicial to the interests of our people. Against the coming into the country of Chinese laborers, Congress has been legislating for years. The reason for such legislation is an old story, and need not be repeated. But, notwithstanding the enactments upon the subject, the laws have been evaded in many ways. By false testimony and concocted evidence the courts have been imposed upon in cases almost without number, and by sea and land the prohibited class in large numbers have been smuggled into the country in one way or another. To prevent all of this, and give effect to its laws upon the subject, as far as possible, Congress deemed it wise by the provision in question to put the burden of proof of his lawful right to remain in the United States on the Chinese person or person of Chinese descent charged with being unlawfully within their borders. To those not residents of and not familiar with the Pacific slope, and not so much subject to the evils intended to be guarded against by the exclusion acts, 'the lines laid down for their enforcement may,' as appropriately and well said by Judge Severens in the case of Sing Lee (D. C.) 54 Fed. 334, 'seem hard; and because such summary dealings with the rights of persons are out of the common order to which we are accustomed, and are liable to produce injustice in many cases on account of their summary expedition and the presumption against the prisoners, they may seem severe; but, if the power resides in Congress to enact such provisions, the discretion whether it will do so rests in the law-making power, and the courts must presume it was exercised upon sufficient reasons.' In respect to the provision of the Geary act putting the burden of proof on those coming within the class thus interdicted, I agree with Judge Severens in the case cited, that there is not only nothing in it violative of the provisions of the Constitution of the United States, but, for the reasons given by him, and in view of the circumstances already referred to and of others that may be suggested, that the provision in question is not unreasonable. He says:

"The person brought before the commissioner is one of a class which, by the terms of the statute, is obnoxious to its operation. That must appear before the general jurisdiction can be exercised, and since, generally, that class is interdicted, he can only escape the common lot upon its appearing that he is not within the general condemnation. The means of showing this are presumably in his own control. It would be extremely inconvenient, and probably in most cases impracticable, for the government to bring proof of the negative fact that the respondent is not within the exemption. Such circumstances are the basis of the rule of evidence which devolves the burden on the party who presumably has the best means of proving the fact; but, whatever the rule which by the common law would be applicable to trials, it cannot be affirmed that in such conditions the Legislature cannot prescribe such a rule of evidence.' "

We see no merit in the suggestion that there was nothing to show to the commissioner that the appellant was a Chinese person or person of Chinese descent. He himself testified that he was born in China, and first came to the United States the previous year from China, and that he was a laborer. Certainly the fact that he was a native of China, coupled with his personal appearance, indicating by his

dress, physiognomy, and queue, that he was a Chinaman, was sufficient to justify a finding to that effect, in the absence of any showing to the contrary.

The judgment is affirmed.