UNITED STATES v. TOM WAH.

(District Court, N. D. New York. March 12, 1908.)

1. UNITED STATES COMMISSIONERS—NATURE OF OFFICE—POWERS.

United States commissioners are neither judges nor courts, nor do they hold courts, though at some times acting in a quasi judicial capacity, nor do they possess the power of courts except in so far as the acts of Congress conferring certain authority and imposing certain duties on them specially confer the same.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, United States Commissioners, § 3.]

2. CONTEMPT—COURTS OF RECORD—POWER TO PUNISH.

All courts of record have inherent power to enforce their orders and mandates by punishment as for contempt, unless the law creating them expressly limits such power.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 95.]

3. WITNESSES—REFUSAL TO TESTIFY—PUNISHMENT—CONTEMPT.

By the express provisions of Act Cong. March 2, 1831, c. 99, 4 Stat. 487, Rev. St. § 725 (U. S. Comp. St. 1901, p. 583), a federal court has power to punish a duly subpœnaed witness for contempt in refusing to obey its commands.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 37–41; vol. 10, Contempt, § 103.]

4. SAME—DEPORTATION PROCEEDINGS.

Power to enforce their processes not being specially conferred on United States commissioners, there is no authority vested in such commissioners sitting in a Chinese deportation case to compel a witness duly subpœnaed to be sworn and give evidence, but, if the witness refuses, his refusal should be reported to the United States District Court, which has authority to compel the witness to testify by means of contempt proceedings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 37–41; vol. 10, Contempt, §§ 98–103.]

5. CONTEMPT—HEARING BEFORE REFEREE.

Under a state statute authorizing courts of record to appoint referees and refer cases to them to hear and report, or to hear and determine, such courts may punish contempts committed before such referees, in the absence of a statute conferring such power on the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, § 95–98.]

6. WITNESSES—REFUSAL TO TESTIFY—PRIVILEGE—CHINESE DEPORTATION PROCEEDINGS—"PENALTY"—"FORFEITURE."

Alien Chinese persons not of the exempt classes having no right to be or to remain in the United States, a deportation proceeding is a civil proceeding, not involving punishment for a crime, the imposition of a fine, or the enforcement of a "penalty" or "forfeiture"; and hence the defendant may not refuse to become a witness against himself (citing 3 Words & Phrases, 2893, Title "Forfeiture," and 6 Words & Phrases, 5272, Title "Penalty").

At Law. Proceeding in the nature of contempt to compel the defendant, Tom Wah, to be sworn in this proceeding as a witness in

behalf of the United States, and to testify and answer questions material to the issue.

Geo. B. Curtiss, H. E. Owen, and Alford W. Cooley, for the United States.

R. M. Moore and B. W. Berry, for defendant.

RAY, District Judge. This is a proceeding, under the Chinese exclusion act, for the deportation of the above-named defendant, Tom Wah, who asserts the right to remain and be in the United States on the ground that he is a citizen thereof. His claim is that he was born in the United States, and is therefore entitled to be and remain here. The United States denies this, and seeks his deportation. On the trial of this question before Benjamin L. Wells, one of the commissioners of the United States in and for the Northern district of New York, duly appointed by the District Court and district judge of the said district, and after the said Tom Wah had produced a witness who gave evidence tending to show that said Tom Wah was born in the United States, and rested, the United States, having duly subpœnaed him, called said Tom Wah as a witness in its behalf, presumably to show or give evidence tending to show that he was not born in the United States, and therefore is not entitled to be or remain here. Tom Wah took the stand before the commissioner, and, on advice of counsel, refused to be sworn or testify or answer questions relevant and material to the issues being tried then and there put to him. Thereupon the matter and facts were certified to this court for such directions and order as it shall see fit to make in the premises. The commissioner held he had no power to compel the witness to be sworn, or to commit or punish him in any way for refusing to be sworn, or to testify, or to punish him for contempt. This is an important question, and one in which the government as well as all Chinese persons are deeply interested.

United States Commisioners are neither judges nor courts, nor do they hold courts, although sometimes they act, so far as jurisdiction and power is conferred upon them, in a quasi judicial capacity. Todd v. United States, 158 U. S. 282, 15 Sup. Ct. 889, 39 L. Ed. 982; Ex parte Hennen, 13 Pet. (U. S.) 230, 10 L. Ed. 138; United States v. Allred, 155 U. S. 591, 15 Sup. Ct. 231, 39 L. Ed. 273; United States v. Clark, 1 Gall. 497, Fed. Cas. No. 14,804; In re Perkins (D. C.) 100 Fed. 950; United States v. Beavers (D. C.) 125 Fed. 778. When exercising their powers, they do not sit as courts; nor do they possess the power of courts, except in so far as the acts of Congress conferring certain authority and imposing certain duties upon them specially mention certain powers. They may do what they are authorized to do, but no more. Same cases. All courts of record have the inherent power to enforce their orders and mandates by punishment as for a contempt of court unless the law creating them expressly limits that power. Rapalje on Contempts, 1, and numerous cases cited; Bessette v. W. B. Conkey, 194 U. S. 324, 326, 24 Sup. Ct. 665, 48 L. Ed. 997; Ex parte Robinson, 19 Wall. 505, 510, 20 L. Ed.

205; In re Chiles, 22 Wall. 157, 168, 22 L. Ed. 819. Says the court, per Brewer, J., in Bessette v. W. B. Conkey Co., supra:

"The power to punish for contempt is inherent in all courts."

In Ex parte Robinson, supra, the Supreme Court said:

"The power to punish for contempts is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject they became possessed of this power. But the power has been limited and defined by the act of Congress of March 2, 1831. The act in terms applies to all courts. Whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may perhaps be a matter of doubt. But that it applies to the Circuit and District Courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is therefore to them the law specifying the cases in which summary punishment for contempts may be inflicted."

By Act Cong. March 2, 1831, c. 99, 4 Stat. 487 (Rev. St. § 725 [U. S. Comp. St. 1901, p. 583]), this power is limited as follows:

"That such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness or other person, to any lawful writ, process, order, rule, decree or command of the said courts."

By the very terms of the act a witness duly subpœnaed may be punished for contempt in refusing to obey its commands. It may be doubted whether Congress may create a court, and thereafter so limit its powers as to deprive it of the ordinary and necessary powers of a court. This would be to deprive it of one of its most essential attributes. No doubt the manner of its exercise may be prescribed as matter of procedure. But, however this may be, as United States commissioners of this class, those now appointed by the district judges and District Courts, are not courts, do not hold courts in the proper sense of the term "courts," they do not possess the inherent power to punish a refusal to obey their own processes and mandates, and, as such power is not expressly granted or conferred, there must be a resort to some tribunal having power if their mandates are to be enforced. As the power to enforce their processes is not specially conferred by the Chinese deportation act or elsewhere on these commissioners, there is no authority vested in a commissioner of the United States sitting in a Chinese deportation case to compel a witness duly subpœnaed to be sworn or to give evidence. If a witness subpœnaed in such a case can be compelled to be sworn, the power must be exercised by some other tribunal or officer. As a commissioner of this class is an officer, or an arm, of the court appointing him, it would seem that such court or a judge thereof ought to have power to make such orders, and compel obedience thereto, as will enable such commissioner to properly exercise or discharge his functions, exercise

and make effectual the powers committed to or conferred upon him by Congress. Jurisdiction in Chinese cases and in certain criminal cases having been conferred on such commissioners, officers of this court, it would seem there must be power somewhere to compel witnesses duly called before them by subpœna to be sworn and answer material questions. If this is not the law, then United States commissioners may as well go out of business; for, as soon as that fact is judicially declared, and until Congress acts, they would be powerless to compel witnesses to be sworn, and, as the court or judge appointing them is also declared powerless, as are all other courts, all unwilling witnesses will avail themselves of the right, and sit unsworn and silent. The administration of justice would thus be hampered, and in many cases defeated.

I am therefore of the opinion that the acts of Congress which confer on United States commissioners the authority to hear and decide these Chinese cases in the first instance commit the jurisdiction of such cases to the United States District Courts, prescribing the officers of that court who shall take cognizance of them in the first instance with right of appeal to the District Court (The U. S. Petitioner, 194 U. S. 194, 24 Sup. Ct. 629, 48 L. Ed. 931), and that the court has power to come to the aid of these officers and enforce their lawful orders and mandates in all proper ways; that the court may direct witnesses, duly subpœnaed, before such commissioners to be sworn and to answer all proper questions and punish such witnesses in case of their refusal to obey. I am not willing to concede, and protest against the doctrine advanced, that Congress has made a law authorizing the District Court to appoint commissioners, has prescribed the duties of such commissioners, including the power to try and determine certain questions in certain cases, and devolved the performance of same upon them; but has left them powerless and the court without power to aid them, in an appropriate way, in the performance of such duties. The authorities are against such a proposition. In criminal cases before them it has been well held, I think, that witnesses may be subpœnaed, sworn, and compelled to answer. In re Perkins (D. C.) 100 Fed. 950, 953, 954; United States v. Beavers (D. C.) 125 Fed. 778, 780, 781; Ex parte Perkins (C. C.) 29 Fed. 900. These cases hold that, while the commissioner cannot punish the witness for contempt, the court appointing him may. In the state of New York the courts of record may appoint referees and refer cases to them to hear and report, or to hear and determine. Such courts may punish contempts committed before such referees in the absence of a statute conferring such power on the court. Where the Circuit Court of the United States refers examination to a special examiner, it may commit a witness who refuses to answer for contempt. Nelson v. United States, 201 U. S. 92, 26 Sup. Ct. 358, 50 L. Ed. 673.

It then becomes a question whether a Chinese person found in the United States against whom deportation proceedings are taken may be subpœnaed in such proceeding and compelled to be sworn, and give evidence in behalf of the United States and consequently against himself. If the question at issue involves punishment for the commis-

sion of a crime or the imposition of a fine or the enforcement of a penalty or a forfeiture, such party called and sworn cannot be compelled to answer. Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Lees v. United States, 150 U. S. 476, 14 Sup. Ct. 163, 37 L. Ed. 1150. It has been finally and explicitly decided by the Supreme Court of the United States that these Chinese deportation cases are not criminal, nor are they criminal in their nature, but civil proceedings. Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905; United States v. Hung Chang, 134 Fed. 19, 67 C. C. A. 93; Low Foon Yin v. U. S. Immigration Commissioners, 145 Fed. 791, 76 C. C. A. 355; Law Chin Woon v. United States, 147 Fed. 227, 77 C. C. A. 369. In Fong Yue Ting v. United States, supra, Mr. Justice Gray, in giving the opinion of the court, said:

"The proceeding before a United States judge, as provided for in section 6 of the act of 1892, is in no proper sense a trial and sentence for a crime or offense. It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country. The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which the word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority and through the proper departments, has determined that his continuing to reside here shall depend. He has not therefore been deprived of life, liberty, or property without due process of law; and the provisions of the Constitution, securing the right of trial by jury, and prohibiting unreasonable searches and seizures, and cruel and unusual punishments, have no application."

This was quoted and approved by the same court in Wong Wing v. United States, 163 U. S. 236, 16 Sup. Ct. 977, 41 L. Ed. 140. Clearly they do not involve the imposition of a fine. Do they involve the imposition or enforcement of a penalty or a forfeiture? Alien Chinese persons, not of the exempt classes, have no right to be or remain in the United States. Congress has so declared. The Nation in the exercise of its sovereign power has so declared. The United States has the sovereign right to exclude alien Chinese seeking to enter its domain, and to send out, exclude thereform, all such persons found therein. In so doing the United States deprives the Chinese alien of no right, imposes no fine, enforces no penalty or forfeiture. The Chinese person by unlawfully coming into or remaining or being in the United States incurs no fine, penalty, or forfeiture. He is not fined; no penalty is imposed. He forfeits no property or property rights, or other rights, as he has no right to be or remain here. This precise question has been passed upon by the Supreme Court of the United States in Fong Yue Ting v. United States, supra, and also by the Circuit Court of Appeals in the following cases: United States v. Hung Chang, 134 Fed. 19, 67 C. C. A. 93; Low Foon Yin v. United States Immigration Commissioners, 145 Fed. 791, 76 C. C. A. 355; Law Chin Woon v. United States, 147 Fed. 227, 77 C. C. A. 369. The decision of the Supreme Court is absolutely con-

trolling. The language of Mr. Justice Gray, already quoted, is emphatic that a Chinese deportation case is not within Boyd v. United States and Lees v. United States, supra. See, also, the numerous cases in 6 Words and Phrases, tit. "Penalty," pp. 5272, 5276, and also volume 3, tit. "Forfeiture." Cassell v. Crothers, 193 Pa. 359, 44 Atl. 446; Wiseman v. McNulty, 25 Cal. 230, 237; Roblee v. M. L. Ass'n (Sup.) 77. N. Y. Supp. 1098, 1100; State v. McConnell, 70 N. H. 158, 46 Atl. 458; Van Beuren v. Digges, 52 U. S. 461, 477, 13 L. Ed. 771.

It is true that expressions to the contrary may be found, but this was before the Supreme Court of the United States had spoken on the subject, or before its decisions had become well known. If the District Court is to punish the recusant and contumacious witness, it seems to me eminently wise and proper that it should first make an order that the witness be sworn and answer all proper questions, and that the commissioner make a like order, whereupon, if the witness still refuses to be sworn or answer proper and pertinent questions which do not incriminate or tend to disgrace him, or subject him to a fine, penalty, or forfeiture, this court on a proper report of the facts can and will make an order punishing the contempt.