## THE UNITED STATES OF AMERICA *vs.* CHING KIM HEE.

### May 25, 1910.

*Chinese exclusion—Deportation proceeding not criminal cause:* A proceeding for the deportation of a Chinese laborer is not a criminal cause within meaning of. sec. 1020 of the Revised Statutes.

*Final judgment—Order forfeiting penalty of recognizance:* An order forfeiting the penalty of a recognizance given on appeal to the district court from an order of a United States commissioner, because of the non-appearance of the defendant, is a final judgment, and it cannot be vacated or reopened at a term of court subsequent to that at which it was made.

*Chinese Exclusion—Deportation Proceedings*: Motion to set aside forfeiture of bail.

*Douthitt & Coke,* for the Movant.
*W. T. Rawlins,* Ass't. U. S. Attorney, for the Government.

ROBERTSON, J.   On the 4th day of August, 1909, a complaint, sworn to by Robert W. Breckons, United States District

Attorney, was filed, in which it was alleged " That one Ching Kim Hee is and has been at all the times herein stated a Chinese laborer and is now within the limits of the Territory and District of Hawaii without the certificate of residence as required by the provisions of the act of May 5th, 1892, and the act of Congress of November 3rd, 1893, amendatory thereof." Upon the complaint a warrant of arrest was issued upon which the said Ching Kim Hee was taken into custody by the United States marshal. Upon a hearing had before a United States commissioner for the District of Hawaii, an order of deportation was made on the 6th day of August, 1909, the commissioner finding the said Ching Kim Hee to be unlawfully and without right within the United States. From that order the defendant took an appeal to this court, and gave recognizance for appearance in the sum of one thousand dollars with two sureties, conditioned that the defendant should personally appear before this court on the first day of February, 1910, and from time to time thereafter as the case might be continued, then and there to answer the charge of being a Chinese laborer and within the limits of the Territory of Hawaii without a certificate of residence required by the act of Congress of the United States of May 5th, 1892, and the act of said Congress of November 3rd, 1893, amendatory thereto, and to abide the judgment of the court. The defendant was thereupon released from custody. On the 18th day of February, 1910, and during the October, 1909, term of court, on motion of the district attorney, the defendant was called, and not answering, on motion of the district attorney, the bond was declared forfeited, and the sum of one thousand dollars was thereupon paid into court by the sureties, and they were discharged from further liability. On April 22nd, 1910, the defendant filed a motion to vacate and set aside the order made on the 18th day of February, and to remit the whole of the penalty thereby declared forfeited, upon the ground that the defendant "did not at any time have any intention of forfeiting said bond, but was prevented from being at said Honolulu and before said court at the time conditioned therein

by circumstances beyond his control." The motion was supported by affidavits of the defendant and of Mr. A. S. Humphreys, his former counsel, who appeared for him in the proceedings before the commissioner. The affidavit of the defendant alleges that for about twenty years last past he has been a seafaring man employed on various American vessels plying between different American ports; that for about six years past he has been employed as a steward on the steamship Texan, a vessel belonging to the American-Hawaiian Steamship Company, plying between Honolulu and New York City, his wages being seventy-five dollars per month; that he is a married man, his wife living in Honolulu and being supported solely from defendant's wages as such steward. The affidavit then sets forth the proceedings had in connection with defendant's arrest and examination before the commissioner, and states that in such proceedings the defendant was represented by A. S. Humphreys, Esq., an attorney of this court. It is also set forth that at the time of the defendant's arrest the said Texan was about to leave the port of Honolulu on a voyage to New York; that the master of the Texan earnestly requested the defendant to accompany him on such voyage as the steward of said vessel, assuring defendant that he would be able to return to Honolulu by the first day of February, 1910; that the defendant consented to make such voyage; that upon her arrival at New York, on or about the 14th day of October, 1909, the Texan was placed in the dry dock at Brooklyn for repairs; that the first steamer belonging to the American-Hawaiian Steamship line that defendant could take was the steamship Isthmian, which sailed from New York on or about the 12th day of November, 1909, bound for San Diego, California; that one of the ports at which said Isthmian touched on the way was the city of Baltimore; that at the request of defendant the master of the Isthmian wrote a letter from Baltimore to said A. S. Humphreys to ascertain if the deportation proceedings against the defendant could be put off until his return to Honolulu; that the said Isthmian proceeded on her voyage and arrived at San Diego on or about the

18th day of January, 1910; that upon the arrival there of the steamer the defendant requested the master to communicate with Mr. Humphreys to ascertain whether or not defendant would be required to be present in Honolulu on said first day of February, 1910; that in response to the letters sent by the master of the steamer as aforesaid, Mr. Humphreys wrote a letter to the captain, which was received by him at Seattle, Washington, in which Mr. Humphreys stated that the case against the defendant could easily be put off until defendant's arrival at Honolulu. These letters are attached to the affidavit. It is further alleged that upon receipt by the captain of the steamer of said letter from Mr. Humphreys, the defendant was informed by the captain that the case could be continued until his arrival in Honolulu; that the defendant at that time was intending to return to Honolulu on the steamship Virginian, sailing from San Francisco on or about the 21st of February; and that, believing from the information received that there was no cause to fear that any action would be taken to declare the bond forfeited by reason of his non-appearance, and at the request and solicitation of the captain of the steamer, the defendant continued as steward of the said Isthmian until her arrival at San Francisco on the 14th day of February, 1910; that upon the defendant's arrival at San Francisco he made preparations to depart for Honolulu on the steamship Virginian, also belonging to the said American-Hawaiian Steamship Company, on the 21st of February, and he was transferred from the Isthmian to the Virginian accordingly; that on February 17th, while temporarily ashore in San Francisco, he was arrested by the United States marshal, being informed by the marshal that he was arrested in pursuance of cabled instructions from the United States district attorney in Hawaii; that after his arrest defendant was confined in jail until the 19th day of February, when he was released from custody upon furnishing a bond in the sum of one thousand dollars, conditioned for his appearance before the United States District Court at Honolulu on the 12th day of April, 1910; that defendant em-

ployed counsel in San Francisco to represent him in connection with the charge upon which he was arrested, and also to assist the defendant in securing a certificate of residence; that in connection with this last mentioned matter, and still believing that he would not be immediately required in Honolulu, defendant remained in San Francisco until the 5th day of April, on which date he left there by the steamer Nevadan and arrived in Honolulu on the 12th day of April, and thereupon he immediately presented himself at the custom house, and thereafter to the United States marshal; that on the 21st day of February, while the defendant was in San Francisco, he caused a cablegram to be sent to said A. S. Humphreys, requesting the latter to "hold the bond"; that in response to said cablegram defendant received a cablegram from said Humphreys stating that the bond had been forfeited. It is further alleged that at the time the defendant furnished the bond for one thousand dollars for his appearance in court on the said first day of February, 1910, his sureties required him to deposit the sum of one thousand dollars in order to indemnify them in case default should be made by the defendant; that said sum of one thousand dollars was accordingly deposited, it being made up of four hundred dollars of defendant's own money and six hundred dollars of moneys borrowed by defendant's wife from various Chinese residents of Honolulu; that defendant has been put to great expense in connection with said deportation proceedings and is unable to pay back said borrowed moneys. And the defendant avers that he has always acted in good faith and fully intended to be in Honolulu on said first day of February, 1910, but, owing to circumstances beyond his control, and believing that his interests would not suffer by reason of his failure to be in said Honolulu on said first day of February, and believing that his attorney, the said A. S. Humphreys, would be able to continue the said deportation proceedings until defendant's arrival at said Honolulu, he neglected to be in said Honolulu on said first day of February and likewise neglected to be there up to the time said bond was forfeited; that at no time did defend-

ant have any intention of forfeiting his bond and that it has always been his desire to obey the process of the court and to be in attendance when his presence was required.

The affidavit of Mr. Humphreys alleges in substance as follows: That he appeared, in conjunction with another attorney, as counsel for the defendant in the proceedings before the United States commissioner; that the steamship Texan, on which the defendant was then employed, was scheduled to sail at five o'clock in the afternoon of the day on which the case had been set for hearing before the commissioner; that in order to facilitate the hearing it was agreed that the defendant should plead guilty to the charge found against him, without prejudice to his right of appeal, and that the question of his right to be enlarged upon bail pending the disposition of his appeal should be informally submitted to the Honorable S. B. Dole, judge of this court; that in pursuance of said agreement, the defendant did, on the 5th day of August, plead guilty to the charge before the commissioner and afterwards on the same day the said judge ordered that said defendant be released upon bail in the sum of one thousand dollars, pending the disposition of his said appeal, the same having been duly perfected; that after the order of said judge had been made, it was agreed between the United States district attorney and the affiant that the recognizance of defendant should be conditioned for his appearance to prosecute his said appeal on the 15th day of January, 1910, but afterwards, and before the recognizance was entered into, the master of the Texan stated that while it was his expectation to return to Honolulu on or before the 15th day of January, yet to guard against contingencies which might delay his return, the recognizance should be conditioned for the appearance of the defendant on the first day of February, 1910; that the United States district attorney consenting thereto said recognizance was so conditioned; that in due course of post the affiant received two letters from the master of the steamship and affiant wrote a letter in reply thereto, said letters being attached to the defendant's affidavit; that when the bail

36—D

of said defendant was fixed at the sum of one thousand dollars, it was proposed to give a cash bond, but the same being refused by the United States district attorney, two sureties were obtained upon the understanding that the affiant would hold the sum of one thousand dollars which had been deposited with him by the defendant for the purpose of indemnifying the sureties of said recognizance against suit; that when the affiant wrote the letter to the master of the steamer informing him that the proceedings could be continued, he had not the slightest doubt that he would be able to secure a continuance of said appeal with the consent of the United States attorney upon showing him the letters received from the master, until such reasonable time after the first day of February as might enable the defendant to return to Honolulu, the affiant being satisfied that the defendant was acting in good faith and was not purposely delaying the prosecution of his appeal; that affiant based his belief that he would be able to secure such continuance of said matter upon the said letters of the master and upon his previous experience with the United States attorney, and also upon the knowledge which affiant knew said attorney possessed in regard to the employment of the defendant on the steamship Texan, and the fact that being a freighter and not a passenger vessel the said steamer did not run on a close schedule; that on the 16th day of February, 1910, the sureties on said recognizance informed the affiant of their receipt of a communication from the district attorney, making demand on behalf of the United States, for the payment into the registry of the court before 10 o'clock of the day following, the sum of one thousand dollars, being the penal sum of said recognizance; that thereupon affiant interviewed said attorney and exhibited to him the letters of the master of the vessel, but found, much to his surprise, that said attorney would not consent to any continuance or postponement of the matter; that said attorney appeared to be fixed in the opinion that it was not the intention of the defendant to voluntarily return to Honolulu, and he informed the affiant that the United States marshal of San Fran-

cisco was seeking to apprehend the defendant but had not up
to that time been able to find him; that the sureties of the recog-
nizance, insisting that affiant should carry out the understand-
ing had as to their indemnity demanded that the said one thou-
sand dollars should at once be paid into court; that upon the
money being paid into court the said sureties were discharged
from all liability in the premises.    It also appears that on the
15th day of February, 1910, the grand jury returned an in-
dictment against the defendant, alleging that he did knowingly
and feloniously use and present a certificate of naturalization
theretofore granted by a court having jurisdiction, to-wit, the
Court of Common Pleas of the City and County of New York,
and by the use and presentation of said certificate of natural-
zation falsely and fraudulently represented himself to be a
citizen of the United States, without him, the said defendant,
having been duly admitted to citizenship, the said certificate
of naturalization having been granted by the said court to one
John Ah Chong, and the said Ching Kim Hee represented him-
self to be the person named in the certificate, with the fraudu-
lent intent to remain in the United States as a citizen of the
United States, the said Ching Kim Hee being a Chinese laborer
and not permitted under the laws of the United States to land
or remain in the United States.    Under that indictment the
defendant was arrested in San Francisco and he there entered
into a recognizance as above stated for his appearance in and
before this court on the first day of the next regular term there-
after to be begun and held in Honolulu.

The present term opened on April 12th, and on the day fol-
lowing the defendant appeared and was arraigned upon said
indictment.

No counter affidavits were filed.

From the showing made in support of the motion, I con-
clude that there was no intention on the part of the defendant
to deliberately evade the condition of the recognizance.    The
combination of circumstances shown by the affidavits fully and

sufficiently accounts for the non-appearance of the defendant on the first day of February.

It is also to be noted that the district attorney knew that the defendant proposed to make the voyage to New York and was aware of the attending uncertainty as to the date upon which the defendant would be able to return to Honolulu. In my judgment, he might well have consented to a continuance of the matter upon being shown the letters received from the captain of the steamer by Mr. Humphreys, as these showed that the defendant was on his way back from New York.

I am of the opinion that the defendant would be entitled to relief if the rules of law applicable to such a case as this permitted it. Bail bonds are taken to insure the presence of defendants in court to abide the judgment, and not for the purpose of enriching the government. And while forfeitures are properly declared and insisted on whenever there is manifested a deliberate intent to evade trial or a careless indifference to the obligation of the bond, the penalty may very well be remitted where there has been a lack of any such elements and the failure to appear has occurred through innocent misunderstanding or by reason of uncontrollable circumstances.

The proceeding for the defendant's deportation was not a criminal cause. *Fong Yue Ting v. United States,* 149 U. S. 698; *Wong Wing v. United States,* 163 U. S. 228; *Low Foon Yin v. Immigration Commissioner,* 145 Fed. 791.

The provisions of section 1020 of the Revised Statutes do not, therefore, apply.

But it has been, and I think properly, held that without statutory authority the courts have inherent power to admit to bail the so-called defendant in deportation proceedings up to the time when the order of deportation has become final. *In re Ah Tai,* 125 Fed. 795; *In re Lum Poy,* 128 Fed. 974.

The power to admit to bail implies the power to declare a forfeiture of the penalty and the power, in a proper case, to remit the same.

The Supreme Court has decided that the appeal provided

for in section 13 of the Chinese exclusion act of September 13, 1888 (25 Stat. L. 476), is an appeal to the district court. *The United States, Petitioner,* 194 U. S. 194. In the absence of any qualifying provision, I take this to mean that such appeals are taken to the court in term.

The order of February 18th which declared the forfeiture, being a final order, it cannot be vacated or reopened at this, a subsequent term. *Bronson v. Schulten,* 104 U. S. 410; *Phillips v. Negley,* 117 U. S. 665; *Tubman v. Baltimore & Ohio Railroad Co.,* 190 U. S. 38; *Lin Hop Fong v. United States,* 209 U. S. 453.

Counsel for the defendant say that, "A deportation proceeding, like proceedings in bankruptcy, equity and admiralty, does not depend on terms. In bankruptcy proceedings the court is always open."

In so far as the statement is correct it is founded on the provisions of statute which do not apply here. See R. S., sections 574 and 638, and section 2 of the bankruptcy act of 1898.

Matters placed in the jurisdiction of this court generally are cognizable only in term. In other words, the court has jurisdiction in vacation only by force of some special statutory provision.

The motion is denied.